## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

RHONDA FLEMING,

     Plaintiff,

v.                                                                   Case No.  4:21-cv-325-MW/MJF

FEDERAL BUREAU OF PRISONS, *et al*.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Rhonda Fleming, a woman incarcerated by the Bureau of Prisons ("BOP"), objects to sharing housing—where cells, toilets, showers and other spaces are in open view—with prisoners who have male genitalia. Proceeding *pro se*, she has filed an amended civil rights complaint in which she challenges the BOP policy that authorizes prison officials to house prisoners with male genitalia in the same facilities as women prisoners. Doc. 10. Fleming claims that the policy—and its enforcement—violates various constitutional and statutory rights. Fleming also challenges particular conditions of confinement at the Federal Correctional Institution in Tallahassee, Florida ("FCI-Tallahassee").

The undersigned recommends that all of Fleming's federal claims be dismissed under 28 U.S.C. § 1915A(b)(1), except: (1) her individual-capacity claim against FCI-Tallahassee Warden Strong under the Religious Freedom Restoration

Act ("RFRA") relating to two particular conditions of confinement at FCI-Tallahassee; and (2) her individual and official-capacity claims against Strong for violation of Fleming's "substantive due process" right to bodily privacy. The undersigned also recommends that the District Court decline to exercise supplemental jurisdiction over Fleming's state-law tort claims against all of the individual Defendants except Strong.[1]

## I. BACKGROUND

### A. Statutory and Regulatory Background

Under federal law, the BOP may place a prisoner in "any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable." 18 U.S.C. § 3621(b). The BOP must consider a number of factors in designating a prisoner's placement, including "the resources of the facility contemplated" and "the history and characteristics of the prisoner." 18 U.S.C. § 3621(b)(1), (3).

In 2003, to reduce the incidence of rape in prisons, Congress enacted the Prison Rape Elimination Act of 2003 ("PREA"), 34 U.S.C. § 30301. Regulations promulgated pursuant to the PREA require the BOP to assess all inmates during

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

intake and upon facility transfer, to determine the prisoner's (1) risk of being sexually abused by other inmates, or (2) risk of being sexually abusive toward other inmates. *See* 28 C.F.R. § 115.41(a) (2012). This process, known as "risk screening," helps determine an inmate's housing assignment. *See id*. § 115.42(a) (2012). The "goal" is to "keep[ ] separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive." *Id*.

The PREA Regulations specifically address risk screening and housing designation for transgender prisoners:

> (c)  In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.

28 C.F.R. § 115.42(c) (2012).

The undersigned takes judicial notice that on January 18, 2017, the BOP issued Program Statement 5200.04, titled "Transgender Offender Manual." *See* Fed. R. Evid. 201(b);[2] *see also* Attach. 1 (Program Statement 5200.04 (Jan. 18, 2017)). On May 11, 2018, the Transgender Offender Manual was revised. *See* Attach. 2 (Change Notice to Program Statement 5200.04 CN-1 (May 11, 2018)). Recently,

---

[2] A court may take judicial notice of facts that are "not subject to reasonable dispute," because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

after Fleming had initiated this civil action, the BOP rescinded the 2018 version of the Transgender Offender Manual and reissued the Transgender Offender Manual as Program Statement 5200.08. *See* Attach. 3 (Program Statement 5200.08 (Jan. 13, 2022)). BOP's Transgender Offender Manual still authorizes prison officials to house prisoners with male genitalia with women prisoners. *Id*. This will be referred to as the BOP's "Transgender Policy."

## B.    Fleming's Lawsuit

Fleming is suing five Defendants in this lawsuit: the United States of America; the BOP; BOP Director Michael Carajval; FCI-Tallahassee Warden Erica Strong; and "Unknown Government Officials." Doc. 10 at 1-4.[3] The latter three Defendants (the "individual Defendants") are sued in their individual and official capacities. *Id*.

The gravamen of Fleming's claims is that the Defendants' promulgation and implementation of the Transgender Policy violates her rights under the First, Eighth, and Fourteenth Amendments, as well as her statutory rights under the RFRA. Doc. 1; Doc. 10 at 9-10. Fleming also challenges two particular conditions of confinement at FCI-Tallahassee that burden the exercise of her religious beliefs and her constitutional right to bodily privacy. *Id*. at 7, 9-10. Fleming asserts state-law tort

---

[3] Citations to page numbers of Fleming's amended complaint are to the numbers appearing at the bottom right corner of the original document. These page numbers coincide with the numbers assigned by the court's Electronic Case Filing ("ECF") system.

claims of negligence and intentional infliction of emotional and physical distress. *Id.* at 10-11. Fleming seeks a declaratory judgment, damages, and equitable relief.

## II. ALLEGATIONS OF FLEMING'S AMENDED COMPLAINT

Fleming alleges that pursuant to the Transgender Policy, she has been housed with prisoners who have male genitalia at various female federal prisons, including FCI-Tallahassee. Doc. 10 at 7, ¶ 1. Fleming states that she "does not believe in transgenderism and refuses to participate in supporting something that is not based on reality and violates her religious beliefs." *Id.* at 7, ¶ 4. Fleming also describes her religious beliefs as including a tenet of modesty, "which requires that she not expose her nude or partially nude body to the opposite sex." *Id.* at 7, ¶ 6; *Id.* at 9, ¶ 14.

Fleming asserts that she, other inmates, and correctional staff at FCI-Tallahassee are required to use feminine pronouns when addressing or referring to transgender prisoners. *Id.* at 7, ¶ 3. Fleming also complains that "[t]here is absolutely no ability for a woman to shield herself from exposing her nudity in open dorms at FCI-Tallahassee." *Id.* at 7, ¶ 2. Fleming explains that she is forced to share intimate spaces with transgender prisoners in open dorms, 24 hours per day, including showers, toilets and dressing areas. *Id.*, ¶¶ 2, 5. Fleming describes that she "has to expose herself several times a day, when showering or using the toilet." *Id.*, ¶ 5. Warden Strong is aware that Fleming does not want to be housed with transgender prisoners. *Id.*, ¶ 9.

Fleming alleges that since implementation of the Transgender Policy, "[she] and other women in federal prisons have been threatened, bullied, sexually harassed, and other misconduct by transgender inmates, many of whom have a history of attacking women and/or violent crimes." *Id*., ¶ 10.

### III.  FLEMING'S CLAIMS

Fleming asserts the following federal causes of action: (1) a statutory cause of action against all of the Defendants under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000(bb), *et seq.*, for burdening Fleming's exercise of her religious beliefs; (2) a cause of action for damages against the individual Defendants for violating the Eighth Amendment, under the theory adopted by the Supreme Court in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); (3) a cause of action against all of the Defendants for violating the due process clause and "equal protection component" of the Fifth Amendment; and (4) a habeas corpus action under 28 U.S.C. § 2241. *See* Doc. 10 at 9-12.[4]

Fleming's allegations of negligence and intentional infliction of emotional distress form the basis for her asserting the following causes of action: (1) a damages action against the United States, the BOP, and the individual Defendants in their

---

[4] Fleming identifies the Declaratory Judgment Act, 28 U.S.C. § 2201, as an additional independent cause of action. Doc. 10 at 9. The Declaratory Judgment Act, however, "is procedural only, and does not create an independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (internal quotation marks and citations omitted); *Carr v. Devos*, 369 F. Supp. 3d 554, 563 (S.D. N.Y. 2019) (same).

official capacities under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, § 1346(b); and (2) a damages action against the individual Defendants under Florida state law. Doc. 10 at 9-12. Each cause of action is described in more detail below.

## A.    RFRA Claims

Fleming sues the Defendants in their individual and official capacities for implementing the Transgender Policy. Doc. 10 at 7; *Id*. at 9, ¶¶ 13-15. She claims that housing her with transgender prisoners violates her religious beliefs and denies her the right to practice a tenant of her faith (modesty). Particularly with regard to FCI-Tallahassee, Fleming claims that Warden Strong's housing of transgender prisoners in "open" dormitories with female prisoners "forc[es] Plaintiff to share intimate spaces with bisexual, biological male inmates" which violates "a tenet of her faith, tznuit/modesty as stated in the Torah/Holy Bible." *Id*. at 7, ¶¶ 2, 5, 6; *Id*. at 9, ¶¶ 13-14. Fleming also alleges that Strong requires prisoners at FCI-Tallahassee to use feminine pronouns when addressing or referring to male-sexed transgender prisoners, which forces Fleming to violate her religious beliefs. *Id*. at 7, ¶ 3. Fleming seeks declaratory relief, damages, and "any relief the Court deems appropriate." *Id*. at 12.

## B.    *Bivens* Claims Based On Violation Of The Eighth Amendment

Fleming is suing Warden Strong, Director Carajval, and "Unknown Government Officials" in their individual capacities for damages for enforcing the Transgender Policy. Doc. 10 at 9, ¶¶ 16-17. Fleming explains:

> Defendants Carajval, Strong, and Unknown Government Officials in their individual capacities, were deliberately indifferent to the physical, emotional, mental, and religious beliefs when they enforced the policy of housing male inmates with female inmates.

> It is cruel and unusual punishment to force women that have been subjected to sexual and domestic abuse by men, to use intimate spaces, exposing their bodies to men they do not even know, complete strangers. This conduct displayed a complete disregard to social norms and the emotional needs of women in federal prisons.

*Id*. at 9, ¶¶ 16-17. These individual-capacity damages claims presumably are brought under *Bivens*. *See Bivens*, 403 U.S. at 392.

## C.   Claims Based On Violation Of The Fifth Amendment

Fleming is suing "the Defendants"—presumably all of them in their individual and official capacities—claiming that their implementation of the Transgender Policy violates her constitutional right to bodily privacy. Doc. 10 at 10, ¶¶ 18-21. Fleming also asserts a due process claim predicated on the theory that she was entitled to notice and an opportunity to be heard prior to implementation of the policy. *Id*., ¶¶ 18-19.

Fleming's equal protection claim is based on sex discrimination. Fleming alleges that by virtue of the Transgender Policy, male-sexed transgender prisoners have been housed in female prisons (thereby requiring female-sexed inmates to

expose themselves to male-sexed inmates). However, the policy has not been implemented the same way in male prisons. Female-sexed inmates who identify their gender as male have not been housed in male prisons and, therefore, male prisoners "do not have to expose themselves to biological female inmates." *Id*., ¶¶ 20-21.

### D.   Tort Claims

Fleming claims that the Defendants' promulgation and implementation of the Transgender Policy constitutes negligence and the intentional infliction of emotional distress. Doc. 10 at 10-11. Flemings asserts claims under the FTCA against the United States, the BOP, and the individual Defendants in their official capacities. *Id*., ¶¶ 22-23. Fleming asserts state-law tort claims against the individual Defendants based on their implementation of the Transgender Policy. *Id*., ¶ 25. Fleming alleges that they "had a duty to protect the Plaintiff and failed to do so causing her to suffer with physical pain, such as headaches, stomach pains, as well as emotional and mental pain, to include depression, anxiety, and depression, living with a sense of hopelessness." *Id*., ¶ 24.

### E.   Habeas Corpus Claim

Fleming asserts that because Director Carajval and Warden Strong are executing her sentence in a manner that violates her constitutional rights, she is entitled to habeas corpus relief under 28 U.S.C. § 2241. Doc. 10 at 11, ¶ 28. In particular, Fleming seeks "an accommodation to the Plaintiff, such as permanent

placement on home confinement for the duration of her remaining sentence." *Id*. at 12, ¶ 30.

## IV.  SCREENING STANDARD UNDER 28 U.S.C. § 1915A

Because Fleming is a prisoner, this court is required to review her amended complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b).

Dismissals for failure to state a claim are governed by the Rule 12(b)(6) standard. *See* Fed. R. Civ. P. 12(b)(6); *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc*., 29 F.3d 1480, 1483 (11th Cir. 1994). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's

obligation to provide the grounds of h[er] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.* at 570; *see also Iqbal*, 556 U.S. at 678.

In other words, a "district court may properly dismiss a complaint if it rests only on 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts.'" *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)). A complaint also may be dismissed for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007).

## V. FLEMING'S PRIOR LEGAL CHALLENGE TO THE TRANSGENDER POLICY ("*FLEMING I*")

In 2017, Fleming, while confined at a BOP facility in Texas, filed a lawsuit with other female prisoners in the United States District Court for the Northern District of Texas against various federal government entities and officials. In that suit, Fleming challenged the Transgender Policy and asserted that it violated her constitutional rights and the RFRA. *See Rhames  v. United States of America, et al.*,

No. 7:17-cv-00009-O (N.D. Tex. May 12, 2017), ECF No. 59 (Third Am. Compl.). Fleming and her co-Plaintiffs also complained about the conditions of their confinement at the Federal Medical Center in Carswell, Texas, where they were being confined with transgender prisoners. *Id*. In addition, Fleming individually complained that prison officials at FMC-Carswell were deliberately indifferent to her need for protection from one or more of the transgender inmates with whom she was housed, and that prison officials retaliated against her when she complained about transgender inmates being housed at the female prison. *Id*. at 20-21. On January 11, 2018, the Northern District of Texas severed Fleming's claims from those of her co-Plaintiffs, and opened a new civil case for Fleming to proceed individually. *Id*., ECF No. 153 (Order to Sever).

Fleming's individual case was assigned Case No. 7:18-cv-00004-O. *See Fleming v. United States of America, et al.*, No. 7:18-cv-00004-O (N.D. Tex. Jan. 11, 2018) ("*Fleming I*"), ECF No. 1 (Order to Sever). On March 30, 2021, Fleming, while housed at FCI-Tallahassee, filed an amended complaint in her individual case that removed the individual defendants and asserted claims only against the United States of America. *See Fleming I*, ECF No. 45 (Am. Compl.) (copy at Attach. 4). Fleming's amended complaint challenged the BOP's Transgender Policy on grounds of negligence, sex discrimination, intentional infliction of emotional distress, and violation of her right to exercise her religion. *Id*. Fleming asserted these claims under

the FTCA, the RFRA, and the Fifth Amendment.[5] *Id*. Fleming sought damages and injunctive relief. *Id*.

On March 31, 2021, the Northern District of Texas dismissed Fleming's amended complaint with prejudice for failure to state a claim upon which relief can be granted. *See Fleming I*, ECF No. 46 (Order Dismissing Case) (copy at Attach. 5).

Fleming appealed to the United States Court of Appeals for the Fifth Circuit, but on July 7, 2021, the Fifth Circuit dismissed her appeal for want of prosecution. *Fleming v. United States of America*, No. 21-10585 (5th Cir. July 7, 2021) (copy at *Fleming I*, ECF No. 60).

Three weeks later, on July 28, 2021, Fleming initiated the instant civil action. Doc. 1. On September 20, 2021, the undersigned required Fleming to replead after determining that her complaint was a so-called "shotgun pleading." Doc. 7. Fleming's amended complaint followed. Doc. 10.

## VI. SCREENING OF FLEMING'S AMENDED COMPLAINT

A.    **Fleming's Claims Against the United States, the BOP, and the Individual Defendants in Their Official Capacities—Challenging the Transgender Policy on Theories of Negligence, Intentional Infliction of Emotional and Physical Distress, Sex Discrimination, and Violation of Her Right to**

---

[5] Fleming identified her sex discrimination claim as arising under Title IX of the Civil Rights Act. Title IX contains a number of miscellaneous provisions. *See* 42 U.S.C. § 2000h, *et seq*. The only provision that mentions sex discrimination is one that allows the Attorney General of the United States to intervene in any federal-court action "seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin." 42 U.S.C. § 2000h-2. The Northern District of Texas construed Fleming's sex discrimination claim as arising under the Fifth Amendment.

**Exercise Her Religion—Are an Abuse of the Judicial Process and Malicious**

Fleming asserts claims under the RFRA, the FTCA, and the Equal Protection Clause against the United States, the BOP, and the individual Defendants in their official capacities based on the promulgation and implementation of the Transgender Policy. Doc. 10. As discussed above, Fleming asserted the same challenges to the Transgender Policy in her suit against the United States in *Fleming I. See* discussion *supra*, Section V. These claims, therefore, should be dismissed as malicious because they are knowingly duplicative of the claims made in *Fleming I. See* Attachs. 4, 5.[6]

The Eleventh Circuit has dismissed duplicative cases as malicious under 28 U.S.C. § 1915A(b)(1). *See Daker v. Ward*, 999 F.3d 1300, 1305-06 (11th Cir. 2021) (dismissing prisoner case—as an abuse of the judicial process and malicious—where prisoner's complaint knowingly made the same or substantially similar challenges to a prison policy that the prisoner made in two other active federal cases against many of the same defendants); *see also Daker v. Bryson*, 841 F. App'x 115, 120-21 (11th Cir. 2020) (dismissing the bulk of prisoner's claims as malicious because they were duplicative of claims prisoner made in a prior lawsuit and were filed to circumvent court orders in the prior case); *Bailey v. Johnson*, 846 F.2d 1019, 1021

---

[6] Because the United States of America was not served with process in *Fleming I*, Fleming's present claims are not barred by *res judicata. See Hart v. Yamaha–Parts Distributors, Inc.*, 787 F.2d 1468, 1471 (11th Cir. 1986) (holding that "named but unserved defendants [are not] 'parties' for *res judicata* purposes"); *see also, e.g., Davis v. Davis*, 551 F. App'x 991, 996 (11th Cir. 2014) (same).

(5th Cir. 1988) ("[R]epetitious litigation of virtually identical causes of action is subject to dismissal . . . as malicious."); *Van Meter v. Morgan*, 518 F.2d 366, 367 (8th Cir. 1975) (affirming dismissal of suit as malicious where the new suit was "directly related, if not identical to" a previously dismissed complaint).

Fleming brought her duplicative claims in this case knowingly. Fleming is an experienced *pro se* litigator. *See* Doc. 10 at 14-20 (disclosing extensive litigation history including several cases that count as "strikes" under 28 U.S.C. § 1915(g)). She filed her complaint in this case within three weeks of the Northern District of Texas dismissing her claims with prejudice in *Fleming I*. Fleming is attempting to avoid the effect of the dismissal of her policy challenges in *Fleming I* by re-asserting the same tort, statutory, and discrimination-based challenges to the Transgender Policy against the United States but naming additional Defendants (the BOP and individual prison officials in their official capacities).

When Fleming was asked on the complaint form in this case whether she had filed other lawsuits in either state or federal court that dealt with the same facts or issue involved in this case, she answered, "No." Doc. 1 at 8; Doc. 10 at 14. At the end of each complaint, Fleming signed her name after the following certification: "I declare under penalty of perjury that the foregoing (including all continuation pages) is true and correct." Doc. 1 at 10-11; Doc. 10 at 17, 21.

Because Fleming knowingly filed her amended complaint in this case containing claims duplicative of those she asserted unsuccessfully in *Fleming I*, and

because she was untruthful on the complaint form about having filed a similar case, the duplicative claims in this action should be dismissed as "malicious" under § 1915A(b)(1). This conclusion applies regardless of whether the duplicative claim is asserted against the United States, the BOP, or an individual Defendant in his/her official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official [ ] capacity suit is, in all respects other than name, to be treated as a suit against the entity." (internal citations omitted)); *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 n.55 (1978) ("Official capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent."); *see also Marsden v. Fed. Bureau of Prisons*, 856 F. Supp. 832, 835 (S.D. N.Y. 1994) (claims against the Bureau of Prisons are "merely claims against the United States.").

For these reasons, the following claims against the United States of America, the BOP, and the individual Defendants in their official capacities should be dismissed:

(1) Fleming's claim that the promulgation/implementation of the Transgender Policy constitutes negligence;

(2) Fleming's claim that the promulgation/implementation of the Transgender Policy inflicts emotional distress and physical pain;

(3) Fleming's RFRA and First Amendment claims that the promulgation/ implementation of the Transgender Policy violates her right to freely exercise her religion; and

(4) Fleming's claim that the promulgation/implementation of the Transgender

Policy constitutes sex-based discrimination in violation of the Constitution.

**B.    Fleming's Amended Complaint Fails to State a Plausible Individual-Capacity Eighth-Amendment Claim Against Warden Strong, Director Carajval and "Unknown Government Officials"**

Fleming attempts to challenge the BOP's Transgender Policy on Eighth-Amendment grounds by asserting individual-capacity *Bivens* claims against Warden Strong, Director Carajval, and "Unknown Government Officials." Doc. 10 at 9. In support, Fleming alleges that these Defendants "were deliberately indifferent to the physical, emotional, mental, and religious beliefs [of female inmates] when they enforced the policy of housing male inmates with female inmates." *Id*. at 9, ¶ 16. Fleming claims that "[i]t is cruel and unusual punishment to force women that have been subjected to sexual and domestic abuse by men, to use intimate spaces, exposing their bodies to men they do not even know, complete strangers." *Id*., ¶ 17.

**1.    *Bivens Should Not Be Extended to This New Context***

In *Bivens*, the Supreme Court recognized an implied cause of action for damages under the Fourth Amendment "to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843, 1854 (2017) (describing *Bivens*, 403 U.S. at 392, 396-97). The conduct at issue in *Bivens* was federal agents' allegedly making a warrantless entry into a man's apartment, searching the apartment, and arresting him without probable cause. *Bivens*, 403 U.S. at 389-90.

Since then, the Supreme Court has extended the *Bivens* remedy to only two new contexts. In *Davis v. Passman*, 442 U.S. 228, 244 (1979), the Supreme Court recognized an implied damages remedy under the "equal protection component" of the Due Process Clause of the Fifth Amendment for a claim of sex-based employment discrimination against a Congressman for firing his female secretary. The Court "inferred a new right of action chiefly because the plaintiff lacked any other remedy for the alleged constitutional deprivation." *Davis*, 442 U.S. at 245 ("For Davis, as for Bivens, it is damages or nothing").

In *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court extended *Bivens* and recognized an implied damages remedy under the Cruel and Unusual Punishments Clause of the Eighth Amendment for a claim of medical deliberate indifference against individual prison officials who denied an inmate medical care. *Carlson*, 446 U.S. at 20. The Court reasoned that the plaintiff's only alternative was an FTCA claim against the United States, but that the threat of a suit against the United States was insufficient to deter the individuals from acting unconstitutionally. 446 U.S. at 21 ("Because the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy.").

"Expanding the *Bivens* remedy is now considered a disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1857. The Supreme Court "has consistently refused to extend *Bivens* to any new context or new category of defendants." *Id*. at 1857 (collecting cases).

Here, Fleming seeks to extend the *Bivens* remedy to a new context. She seeks to recover damages against Federal executive officials in their individual capacities for enforcing a formal, national BOP policy that allegedly violates the Eighth Amendment by housing transgender prisoners in female prisons. Fleming's claim bears little resemblance to the three *Bivens* claims that the Supreme Court has approved in prior cases. The Court has not expanded *Bivens* to cover the kind of policy-based claim advanced by Fleming. *See Ziglar*, 137 S. Ct. at 1860-63. Nor has the Court expanded the implied damages remedy under the Eighth Amendment that was recognized in *Carlson* beyond the prison medical-care context. *See Ziglar*, 137 S. Ct. at 1857.

Many of the factors that caused the Supreme Court in *Ziglar* to decline to extend the *Bivens* remedy to that new context apply equally to this case. In *Ziglar*, former illegal-alien detainees sued individual executive officials (three high executive officers in the Department of Justice and two wardens at the facility where the detainees were held) for damages for their adopting and implementing a formal Bureau of Prisons policy that allegedly violated the detainees' constitutional rights by holding them in restrictive conditions of confinement and subjecting them to frequent strip searches. *Ziglar*, 137 S. Ct. at 1851-54. The Supreme Court identified several factors that counseled against the judiciary (as opposed to Congress) creating and enforcing a cause of action for damages. Many of those factors apply here and counsel against the extension of *Bivens* in this case.

One factor is that "a *Bivens* action is not a proper vehicle for altering an entity's policy." *Ziglar*, 137 S. Ct. at 1860 (internal quotation marks and citation omitted). In addition, as in *Ziglar*, Fleming's claims "would call into question the formulation and implementation of a general policy." *Id*. at 1860. This is problematic, the *Ziglar* Court explained, for these reasons:

> This . . . would necessarily require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged. These consequences counsel against allowing a *Bivens* action against the Executive Officials, for the burden and demand of litigation might well prevent them—or, to be more precise, future officials like them—from devoting the time and effort required for the proper discharge of their duties. *See Cheney v. United States Dist. Court for D. C.*, 542 U.S. 367, 382, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004) (noting "the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties").

*Ziglar*, 137 S. Ct. at 1860.

Third, this is not a case like *Bivens* or *Davis* in which "it is damages or nothing." *Bivens*, 403 U.S. at 410 (Harlan, J., concurring in judgment); *Davis*, 442 U.S. at 245. Unlike the plaintiffs in those cases, Fleming's Eighth-Amendment claims do not seek redress for particular instances of Strong's or Carajval's direct, personal misconduct against her that would be "difficult to address except by way of [a] damages action[ ] after the fact." *Ziglar*, 137 S. Ct. at 1862. Fleming instead challenges a large-scale policy decision concerning the housing of transgender inmates. To address that kind of policy decision, she may seek injunctive relief. *See Ziglar*, 137 S. Ct. at 1863 (noting the availability of injunctive relief to challenge

large-scale policy decisions concerning the conditions of confinement imposed on a large number of prisoners).

Finally, as the Court noted in *Ziglar*, the Prison Litigation Reform Act of 1995, which was enacted after *Carlson* was decided, suggests that "Congress chose not to extend the . . . damages remedy to cases involving other types of prison mistreatment." 137 S. Ct. at 1865. All of the foregoing considerations counsel against this court extending *Bivens* to allow an implied damages remedy under the Eighth Amendment against Director Carajval, Warden Strong, and the "Unknown Government Officials" for their promulgating and enforcing the Transgender Policy.

### 2.   *Fleming Fails to Allege an Eighth-Amendment Violation*

Even if a damages remedy or other relief were available to Fleming, the allegations of her amended complaint fail to state a plausible individual-capacity Eighth-Amendment claim against Strong, Carajval, or "Unknown Government Officials."

"[T]he treatment a prisoner receives in prison and the conditions under which [s]he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment's prohibition against cruel and unusual punishment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable

measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A conditions-of-confinement claim "requires a two-prong showing: an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834).

"[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required." *Thomas*, 614 F.3d at 1304 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). A prison condition is unconstitutional only if it deprives the plaintiff of a human need, *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 305 (1994)), or otherwise "'pose[s] an unreasonable risk of serious damage to h[er] future health' or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

As stated above, the subjective component requires that "the official had a 'sufficiently culpable state of mind.'" *Thomas*, 614 F.3d at 1304 (quoting *Farmer*, 511 U.S. at 834). "[T]he relevant state of mind is deliberate indifference." *Thomas*, 614 F.3d at 1304 (citing *Wilson*, 501 U.S. at 303). This has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245

(11th Cir. 2003) (quotations omitted). The Supreme Court has emphasized that the official must have been actually aware of the risk of harm: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Fleming's amended complaint is devoid of specific factual allegations showing that Strong, Carajval, or "Unknown Government Officials" had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The amended complaint offers nothing more than vague and conclusory allegations that these Defendants transferred male-sexed prisoners to female prisons pursuant to the Transgender Policy, and that by doing so they "were deliberately indifferent to the physical, emotional, mental, and religious beliefs when they enforced the policy of housing male inmates with female inmates." Doc. 10 at 7, ¶¶ 7, 9; *Id*. at 9, ¶ 16. This type of "formulaic recitation" of the element of deliberate indifference is inadequate. *Twombly*, 550 U.S. at 555. Fleming's additional allegation that Warden Strong "is aware that the Plaintiff does not want to be housed with male inmates," Doc. 10 at 7, ¶ 9, does not show that Strong knew of, and deliberately disregarded, an excessive risk of serious harm to Fleming's health or safety.

For the reasons discussed above, Fleming's individual-capacity Eighth-Amendment claims against Defendants Strong, Carajval and "Unknown Government Officials" should be dismissed for failure to state a claim upon which relief can be granted.

**C.    Fleming's Amended Complaint States a Plausible Claim for Relief Under the Due Process Clause for Violation of Her Constitutional Right to Bodily Privacy**

Fleming asserts that "the Defendants" violated her right to due process under the Fourteenth Amendment. Doc. 10 at 10, ¶¶ 18-21. Because Fleming's claim challenges federal—not state—action, the court liberally construes her claim as asserted under the Fifth Amendment.[7]

### 1.    *Fleming's Allegations State a Plausible Due-Process Claim*

Fleming claims that being housed with transgender prisoners violates her constitutional right to bodily privacy. Doc. 10 at 10. Fleming explains that she is "forced to share intimates spaces" with male-sexed inmates, and that she is forced to expose her nude or partially nude body "to the opposite sex" several times a day, when showering or using the toilet. *Id*. at 7. Liberally construed, Fleming's amended complaint appears to challenge both the BOP's Transgender Policy *and* the conditions of her confinement at FCI-Tallahassee. The claim, therefore, is considered an official and individual-capacity claim against Warden Strong.

---

[7] Under this same claim ("Count 4"), Fleming also asserts that Director Carajval and the BOP violated her right to equal protection "by housing bisexual male inmates with her, but not transferring biological female inmates that identify [sic] as being 'men' to men's federal prisons." Doc. 10 at 10, ¶ 20. The undersigned construes this as a sex discrimination claim. As discussed above, this claim should be dismissed as duplicative of the sex-based discrimination claim Fleming raised in her prior suit in the Northern District of Texas. *See* discussion *supra*, Sections V, VI.A.

In *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993), the Eleventh Circuit recognized a prisoner's constitutional right to bodily privacy. The court in *Fortner* explained: "We are persuaded to join other circuits in recognizing a prisoner's constitutional right to bodily privacy because most people have 'a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating.'" *Fortner*, 983 F.2d at 1030 (quoting *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981)). The *Fortner* case involved male inmates' challenge to a prison policy that allowed female correctional officers to view them nude in their living quarters, including their use of the shower and toilet. *Fortner*, 983 F.2d at 1026. The term "other sex" as used in *Fortner*, bears the same meaning as Fleming's use of the term "opposite sex" here.

In light of *Fortner*, Fleming has stated a plausible claim for violation of her constitutional right to bodily privacy. Accordingly, Fleming's official and individual-capacity claims against Warden Strong survive screening under § 1915A. The court need not decide at this juncture whether Fleming could obtain relief beyond a declaratory judgment and injunctive relief.

### 2.    *Fleming's Procedural Due Process Claim Should Be Dismissed*

To supplement her due process theory, Fleming also asserts a procedural due process claim. Fleming claims that she has a constitutionally-protected liberty interest in being housed in an exclusively female-sexed prison, because "[i]t shocks the conscience of the public to know that women are being forced to share intimate

spaces with men in prison." Doc. 10 at 10, ¶ 19. Fleming claims that the Defendants violated her right to procedural due process because they implemented the Transgender Policy without giving her individualized notice and an opportunity to be heard. *Id*. at 10, ¶¶ 18-19.

"A finding that a right merits substantive due process protection means that the right is protected 'against certain government actions regardless of the fairness of the procedures used to implement them.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Because Fleming's due process claim involves a "fundamental" right—the right to bodily privacy—the procedural due process framework does not apply. Accordingly, Fleming's procedural due process claim should be dismissed.

**D.    Fleming's Allegations Fail to State a Plausible Individual-Capacity Claim Under the RFRA and the First Amendment Against Carajval and "Unknown Government Officials," But Fleming States a Plausible Individual-Capacity Claim Against Strong**

The only non-duplicative RFRA and First Amendment claims are Fleming's individual-capacity claims against Warden Strong, Director Carajval, and "Unknown Government Officials."

Congress enacted the RFRA "to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 693 (2014). The RFRA provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as

provided in subsection (b) of this section." 42 U.S.C. § 2000bb-1(a). Subsection (b) provides an exception pursuant to which the government may substantially burden a person's exercise of religion if (1) it furthers a compelling governmental interest; and (2) it is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000bb1-(b)(1) and (2).

The RFRA broadly defines "exercise of religion" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §§ 2000bb-2, 2000cc-5(7)(A). "[T]he 'exercise of religion' involves 'not only belief and profession but the performance of (or abstention from) physical acts.'" *Hobby Lobby*, 573 U.S. at 710 (quoting *Emp. Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990)). "A person whose religious practices are burdened in violation of RFRA 'may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.'" *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) (quoting 42 U.S.C. § 2000bb-1(c)).

For Fleming to establish a claim under the RFRA, she must prove that Strong, Carajval and "Unknown Government Officials" substantially burdened her exercise of her religion. *See Gonzales*, 546 U.S. at 428 (recognizing that a prima facie case under the RFRA is established by showing that a government requirement substantially burdens a sincere religious exercise).

Fleming alleges that a tenet of her religion is modesty with regard to exposing her body to those of the opposite sex. She maintains that the individual Defendants are substantially burdening her exercise of that tenant by housing her in "open dorms" at FCI-Tallahassee with male-sexed prisoners. This forces Fleming to expose her nudity to male-sexed inmates while toileting, showering, and dressing, and also forces her to be exposed to their nudity. Doc. 10 at 7, ¶ 2; *Id*. at 9, ¶¶ 13-15. Fleming alleges that this forced exposure has caused her physical and emotional pain. *Id*. at 9, ¶ 15.

In addition to the privacy issue, Fleming also alleges that as part of her faith, she does not believe in transgenderism and cannot "support something that . . . violates her religious beliefs." *Id*. at 7, ¶ 4. At FCI-Tallahassee, however, she "has been subjected to forced indoctrination" of using feminine pronouns when addressing or referring to male-sexed transgender inmates. *Id*. at 7, ¶¶ 3-4.

Fleming's allegations concerning the conditions of confinement at FCI-Tallahassee state a plausible individual-capacity claim under the RFRA against Warden Strong.[8] Fleming's allegations do not state a plausible individual-capacity

---

[8] Because *Bivens* has not been extended to this new context, and because the statutory scheme provided in the RFRA provides Fleming meaningful redress for Warden Strong's alleged violation of right to exercise her religion, a separate judicially-crafted *Bivens* cause of action under the First Amendment would not be available to Fleming. *Cf. Ziglar*, 137 S. Ct. at 1863 ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." (collecting cases)); *see also Alvarez v. U.S. Immigration and Customs Enforcement*, 818 F.3d 1194, 1206 (11th

claim against Director Carajval or "Unknown Government Officials," because they fail to demonstrate a causal connection between these individuals and the particular conditions of confinement at FCI-Tallahassee. Accordingly, Fleming's conclusory RFRA and First Amendment claims against Carajval and "Unknown Government Officials" should be dismissed for failure to state a claim.

**E.      This Court Should Decline To Exercise Supplemental Jurisdiction Over Fleming's Individual-Capacity State-Law Tort Claims Against Carajval And "Unknown Government Officials"**

Fleming asserts individual-capacity state-law tort claims of negligence and intentional infliction of emotional distress against Director Carajval, Warden Strong, and "Unknown Government Officials." Doc. 10 at 10, ¶ 24. Having dismissed all of Fleming's individual-capacity federal claims against Carajval and the "Unknown Government Officials," this court should decline to exercise supplemental jurisdiction over Fleming's state-law tort claims against these particular Defendants. 28 U.S.C. § 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

**F.      Fleming's Allegations Fail To State A Plausible Basis For Habeas Corpus Relief Under 28 U.S.C. § 2241**

---

Cir. 2016) (declining to recognize a *Bivens* remedy when an existing statutory scheme sufficiently protected the plaintiff's constitutionally recognized interest).

Fleming claims that because her allegations demonstrate that the Defendants are violating her constitutional rights, she is entitled to habeas corpus relief. Doc. 10 at 11, ¶¶ 28-29. The "habeas corpus" relief she seeks is "an accommodation to the Plaintiff, such as permanent placement on home confinement for the duration of her remaining sentence." *Id*. at 12, ¶ 30. This argument fails.

Fleming's constitutional challenges to her confinement are ultimately objections to her conditions of confinement. Although circuit courts are divided on whether habeas corpus is the appropriate mechanism for challenging conditions of confinement, the weight of authority in the Eleventh Circuit is that it is not. *See Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990) ("If these claims are considered in a habeas corpus context, however, this Court has held that even if a prisoner proves an allegation of mistreatment in prison that amounts to cruel and unusual punishment, he is not entitled to release." (citing *Cook v. Hanberry*, 596 F.2d 658, 660 (5th Cir. 1979))); *Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) ("Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law."); *Cook v. Baker*, 139 F. App'x 167, 168 (11th Cir. 2005) (holding similarly to *Vaz*); *Daker v. Warden*, 805 F. App'x 648, 651 (11th Cir. 2020) (holding that because petitioner's First and Eighth Amendment claims were

cognizable in a civil rights action, they were not cognizable under the mutually exclusive remedy of habeas corpus).

Because civil rights actions and habeas corpus actions are mutually exclusive, and because this civil rights action provides Fleming a means to remedy the allegedly unlawful conditions of her confinement, her claims are not cognizable under the mutually exclusive remedy of habeas corpus.

## VII.   CONCLUSION

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that:

1.     This case be remanded to the undersigned for further pretrial proceedings on the following claims against Defendant Warden Strong:

    a.     Plaintiff's individual-capacity claim against Strong under the RFRA for substantially burdening Plaintiff's exercise of her religion by requiring her to expose her nudity to male-sexed inmates who claim female gender and by requiring her to use feminine pronouns when addressing or referring to male-sexed inmates;

    b.     Plaintiff's individual and official-capacity claims against Strong for violation of Plaintiff's constitutional right to bodily privacy; and

    c.     Plaintiff's individual-capacity state-law tort claims against Strong.

2.      That all other federal claims in this lawsuit be dismissed with prejudice under 28 U.S.C. § 1915A(b)(1).

3.      That all state-law claims against Defendants Carajval and "Unknown Government Officials" in their individual capacities be dismissed without prejudice.

At Panama City, Florida, this 22nd day of February, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**