IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **RHONDA FLEMING,** | § | |
| Bureau of Prisons Reg. No. 20446-009, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 7:18-cv-004-O |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER DISMISSING CASE

### Background

This is a civil rights action filed by Rhonda Fleming, an inmate who, at the time of filing, was confined in the Carswell Federal Medical Center ("FMC Carswell") in Fort Worth, Texas. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (although 42 U.S.C. § 1983 applies only to state actors, civil rights actions may be brought against federal employees). The case was severed from a previously filed action, *Rhames v. United States*, No. 7:17-cv-009-O (N.D. Tex. 2019), which was brought by Fleming and three other inmates.   *See* Order Severing Claims, ECF No. 1. At issue in the original case was the Federal Bureau of Prisons' policy of housing inmates who were born male but now identify is female inmates (hereafter referred to as the "transgender issue") in female prison facilities. In addition to the transgender issue, Fleming stated that she had been denied access to her legal materials, threatened by Department of Justice employees, given a work assignment that violated her work assignment restrictions, force-fed and sexually abused by male officers,

1

watched by male officers while she was nude or semi-nude, retaliated against for reporting officers' misconduct and for engaging in litigation, denied medical and psychological care, denied the right to be present when her legal mail was opened, attacked by prison employees and by other inmates, and sexually assaulted by correctional staff. *Id.* Fleming sought to amend the complaint in the original action to include her additional claims and she stated that there were other prison officials and employees who should have been added as defendants. *Id.* Because the additional claims raised by Rhonda Fleming were individualized and arose out of transactions or occurrences unrelated to the transgender issue, her claims were severed from the original action. *Id.*

When the instant action was opened, Fleming was ordered to file a complaint naming all Defendants and stating all facts known to her that she relied on to establish that her civil rights had been violated. *See* Order, ECF No. 4. The Clerk of Court sent Fleming two prisoner civil rights forms. *Id.* Fleming was ordered to complete one form and return it to the Court with the second form to be completed and kept for her records. *Id.* Rather than comply with the Court's order and file her individual complaint, Fleming filed a slightly redacted copy of Plaintiffs' Third Amended Verified Complaint and copies of Exhibits that were previously filed by counsel in the original case. *See* Complaint, ECF No. 6; *Rhames v. United States*, No. 7:17-cv-009-O (N.D. Tex. 2019) at ECF No. 59.

Review of Fleming's pleadings reflects that she originally presented claims that Defendants were deliberately indifferent for her need for protection from transgender inmates, that she suffered retaliation for complaining about transgender inmates, that housing

2

transgender inmates in the women's prison violated her First Amendment rights and her rights under the Religious Freedom Restoration Act, and that Defendants' policy of housing transgender inmates in the women's prison was unconstitutional. *See* Complaint, ECF No. 6; Plaintiff's Answers to the Court's Questionnaire, ECF No. 22. She sought declaratory judgment, injunctive relief, and monetary damages. *See* Complaint, ECF No. 6 at 36-38.

On April 9, 2020, Plaintiff filed a Motion to Amend the Complaint which has been granted. *See* ECF No. 44. In her amended complaint, Plaintiff maintains her claims related to the transgender issue and now seeks relief on grounds of negligence, sex/gender discrimination, intentional infliction of emotional distress, and violation of the Religious Freedom Restoration Act ("RFRA"). *See* ECF No. 45. Plaintiff has removed the individual Defendants from this action and now seeks relief only against the United States of America. *Id.*

In support of her amended complaint, Plaintiff alleges the following:

> 1. Defendant promulgated a policy that allows transgender inmates to be housed in female prisons and there are transgender inmates at FCI-Tallahassee where Plaintiff is confined;
>
> 2. female inmates were not told and had no knowledge that they were being housed with transgender inmates, sharing intimate facilities such as showers and toilets, and that her right to bodily privacy was never considered by the Defendant;
>
> 3. transgender inmates at FMC Carswell exposed themselves to the Plaintiff and other female inmates which confirmed rumors that there were transgender inmates in the prison;
>
> 4. the transgender inmates are aggressive and have verbally and physically attacked and threatened female inmates, including Plaintiff. Transgender inmates share housing units with female inmates in the Special Housing Unit ("SHU"). The SHU cells have an open area to use the toilet and shower. As such, any woman housed in the SHU is forced to expose her body to transgender inmates. Female inmates begged not to be locked in SHU cells with these men;

3

> 5. complaints made by Plaintiff and other women were ignored by prison officials;
>
> 6. prison employees told all female inmates that they had to accept the transgender inmates as being female and use the proper pronouns when addressing them, in violation of Plaintiff's rights to free speech and her religious beliefs;
>
> 7. Plaintiff shares a cell with a female inmate who claims that she identifies as a man and therefore, the transgender policy is discriminatory because it applies to male to female inmates but not female to male inmates; and,
>
> 8. Plaintiff remains in prison in violation of her right to bodily privacy based on the Bureau of Prisons' "Transgender Offender Manual," which allows transgender inmates of both sexes to be housed with biological female inmates.

*See* ECF No. 45 at 2. Plaintiff seeks monetary damages and injunctive relief. *Id.* at 3-4.

## Statutory and Regulatory Background

In *Driever v. United States of America*, The United States District Court for the District of Columbia set forth the statutory and regulatory background at issue in the instant case as follows:

> The BOP may place a prisoner in "any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable." 18 U.S.C. § 3621(b). Among other considerations, the BOP must assess "the history and characteristics of the prisoner" and "the resources of the facility contemplated." *Id.* Regulations promulgated to implement the Prison Rape Elimination Act of 2003 (PREA), 34 U.S.C. § 30301, 28 C.F.R. § 115 ("PREA Regulations"), also require the BOP to assess all inmates during intake and upon facility transfer, to determine the prisoner's (1) risk of becoming a victim of sexual abuse, or (2) propensity to commit sexual abuse. *See* 28 C.F.R. § 115.41. This process, known as "risk screening," helps determine an inmate's housing assignment. *See id.* § 115.42. The PREA Regulations specifically address risk screening and housing designation for transgender prisoners:
>
>> [i]n deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a

4

>placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.

*Id.* § 115.42(c).

In January 2017, the BOP issued Program Statement 5200.04, memorialized in its "Transgender Offender Manual" ("Manual"). Defs.' Memorandum in Support of Motion to Dismiss Official Capacity Claims ("Defs.' MTD Mem. I"), ECF No. 13 at 3. The Manual "offer[s] advice and guidance on unique measures related to treatment and management needs of transgender inmates and/or inmates with [Gender Dysphoria], including designation issues[,]" *id.* (citing Manual ¶ 5). It also delineates standards for the BOP's Transgender Executive Council (TEC), which oversees the "treatment and management needs of transgender inmates and/or inmates with GD, including designation issues." *Id.* In May 2018, the BOP issued and incorporated a "Change Notice" to the Manual, which added new details to certain Manual provisions. *Id.* at 3 n.1, 3. Relevant here are these additions:

>the TEC, on a case-by-case basis, will recommend placement of transgender inmates 'us[ing] biological sex as the initial determination for designation;' *id.* ¶ 5; (2) the TEC will consider the health and safety of transgender inmates, 'exploring appropriate options available to assist with mitigating risk to the transgender offender, to include but not limited to cell and/or unit assignments, application of management variables, programming missions of the facility, etc.;' *id.*, and (3) the TEC will consider 'whether placement would threaten the management and security of the institution and/or pose a risk to other inmates in the institution (*e.g.*, considering inmates with histories of trauma, privacy concerns, etc.).'

*Id.* at 4 (citing Manual ¶ 5).

*Driever v. United States,* Civ. A. No. 19-1807-TJK, 2020 WL 6135036 at *1 (D.D.C. Oct. 19. 2020).

## **Legal Standards**

A district court may summarily dismiss claims filed by a plaintiff proceeding *in forma pauperis* if it concludes that the claims are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). To state a claim upon which relief may be granted, a

5

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and she must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.' " *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and while the Court must accept all of the plaintiff's factual allegations as true, it is " 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

Plaintiff was given the opportunity to expound on the factual allegations of her complaint by way of questionnaire. *See Eason v. Thaler*, 14 F.3d 8 (5th Cir. 1994) (requiring further development of insufficient factual allegations before dismissal as frivolous is proper); *Watson v. Ault*, 525 F.2d 886, 892-93 (5th Cir. 1976) (affirming questionnaire as a useful and proper means for a court to develop the factual basis of a *pro se* litigant's complaint). Plaintiff

6

filed her answers and, for the purpose of the Court's review at this stage of litigation, the facts stated by Plaintiff in support of her complaint are presumed true. *See* Plaintiff's Answers to the Court's Questionnaire, ECF No. 22. However, " 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice' to state a claim for relief" under the Civil Rights Act. *Coleman v. Lincoln Parish Detention Center*, 858 F.3d 307, 309 (5th Cir. 2017) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## Negligence

Plaintiff first claims that Defendant breached its "duty to the Plaintiff by negligently failing to consider the physical and psychological harm to women by implementing a transgender policy which did not address cultural norms and the religious beliefs of female inmates." *See* ECF No 45 at 2. Plaintiff states that "Defendant was negligent in [its] researching, training, and implementing of the transgender policy without interviewing female inmates, engaging with community women advocates, or prison experts, most of whom are against this policy." *Id.* And Plaintiff complains that no action was taken by prison officials at FMC Carswell after threats were made against her by transgender inmates. *Id.* at 3.

Plaintiff's negligence claims appear to implicate the Federal Tort Claims Act ("FTCA") (*see* ECF No. 45 at 5), which essentially borrows from state law in that it allows the United States to be held liable for allegedly tortious conduct "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Plaintiff was confined in FMC Carswell in Fort Worth, Texas at the time of filing. Thus, it appears that the substantive law of Texas would generally apply to Plaintiff's claims of negligence. Plaintiff also appears to present

7

a failure-to-protect claim for prison officials' lack of response to threats against her by transgender inmates while she was confined in Texas.

Assuming that Plaintiff has exhausted her administrative remedies under the FTCA as required, there are explicit statutory exceptions which provide that the FTCA shall not apply to allegations of negligence against the United States for certain claims. 28 U.S.C. § 2680. Because the FTCA provides a waiver of immunity otherwise to be accorded the sovereign, the limitations and conditions upon which the government consents to be sued must be strictly construed in favor of the United States. *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2nd Cir. 1988). 28 U.S.C.A. § 2680(a) provides:

> The provisions of this chapter and section 1346(b) of this title shall not apply to--
>
> > (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680 (West 2006). Although Plaintiff seeks relief pursuant to a claim that the transgender policy was negligently enacted, her factual allegations relate to the Bureau of Prisons' implementation of the policy rather than the enactment of the policy itself. Plaintiff cannot recover against the United States under the FTCA on any claim of negligent implementation of the transgender policy by prison officials.

Plaintiff claims that the transgender policy was negligently enacted because government officials failed to consider the potential physical and psychological harm to female inmates and

8

because the research, training, and implementing of the transgender policy was conducted without interviewing female inmates or engaging with female community advocates and prison experts. These claims are conclusory in nature and, as such, are insufficient to state a claim for relief. While Plaintiff herself may not have been consulted prior to enactment of the transgender policy, her subjective belief that government officials should have proceeded differently is insufficient to demonstrate negligence such that the United States is liable to her under the FTCA.

### **Failure to Protect**

To the extent that Plaintiff presents a failure-to-protect claim for prison officials' lack of response to threats made against her by transgender inmates while she was confined in Texas, she has failed to state a claim. "Prison officials are not . . . expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). Although unfortunate, threats of violence are common in the prison environment. *Newton v. Black*, 133 F.3d 301, 307 (5th Cir. 1998). If action on the part of prison officials was constitutionally required every time an inmate reported a perceived risk of violence, inmates would quickly learn to control the prison environment simply by alleging risks of danger. In the instant case, Plaintiff's subjective belief that her safety was at risk because of the transgender inmates, without more, does not show that Defendant actually perceived, and ignored, a substantial risk of harm. *See Baird v. Hodge*, 605 F. App'x 568, 570 (7th Cir. 2015) (finding inmate's claim that he was at risk of attack from other inmates because he was a former police officer, without more, too speculative to warrant relief) (citing *Michigan v. U.S. Army Corps of Eng'rs*, 667

9

F.3d 765, 788 (7th Cir. 2011); *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704-06 (7th Cir. 2005)).

Plaintiff does not claim to have informed Defendant of any specific threats by transgender inmates and she presents no allegation that could indicate that Defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. *Compare Silva v. Moses*, 542 F. App'x 308, 311 (5th Cir. 2013) (affirming dismissal of failure-to-protect claim despite plaintiff's allegation that defendants knew of previous violent incidents but declined to take protective measures to prevent future attacks), *and Mitchell v. Wilkinson*, 193 F. App'x 372, 373 (5th Cir. 2006) (affirming dismissal of failure-to-protect claim where plaintiff's allegations that defendant knew of animosity between the inmates and that the animosity would result in an attack was not supported by any specific facts), *with Purvis v. Johnson*, 78 F. App'x 377 (5th Cir. 2003) (vacating and remanding dismissal of failure-to-protect claim where Plaintiff had repeatedly informed prison officials over an eight-day period that he was in danger because his cellmate threatened him every day due to his race and bullied him while in their cell, and prison officials had rebuffed him when he asked for help). "[M]aintaining [a] safe and orderly prison is a difficult task, and even the most vigilant oversight may not be able to prevent every incident. [The court] therefore allow[s] claims against prison officials only if there is a clear and substantial showing of fault, as reflected by the deliberate indifference requirement." *Brown v. Harris County, Texas*, 409 F. App'x 728, 731 n. 7 (5th Cir. 2010).

10

Although Plaintiff expresses a generalized fear of transgender inmates, the mere threat of violence does not by itself constitute a failure to protect. *See Farmer v. Brennan*, 511 U.S. 825, 858–59 (1970) (Thomas, J., concurring) (recognizing that "[p]risons are necessarily-dangerous places," which "house society's most antisocial and violent people in close proximity with one another," thereby making it inevitable that "some level of brutality . . . among prisoners" may occur); *Foxx v. State of Mississippi*, No. 1:17-cv-61-LG-RHW, 2019 WL 2998571, at *3 (S.D. Miss. June 5, 2019). Thus, Plaintiff's allegation of threats from transgender inmates fails to state a failure-to-protect claim. *See Coleman v. Tanner*, CIV. A. No. 12-906, 2012 WL 3138173, at *4 (E.D. La. July 13, 2012), *rec. adopted*, 2012 WL 3138115 (E.D. La. Aug. 1, 2012) (finding threats from other inmates do not give rise to any Eighth Amendment claim) (citing *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995); *Watson v. Winborn*, No. 02–10984, 67 F. App'x 241, 241 (5th Cir. 2003); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Vessell v. Gusman*, No. 06–2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006)). Plaintiff she cannot prevail against the United States on her failure-to-protect claim.

## Sex/Gender Discrimination

Plaintiff claims that she is being forced to expose herself and share intimate facilities with transgender inmates while male inmates in other prisons are not forced to do so. *See* ECF No. 45 at 3. Therefore, Plaintiff argues, "Defendant's transgender policy is sex discrimination because female inmates are being treated differently than similarly situated male inmates in other prisons." *Id.* Here, Plaintiff presumably seeks relief under *Bivens v. Six Unknown Named*

11

*Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the United States Supreme Court recognized a right of action for damages against federal officers alleged to have violated a plaintiff's constitutional right to be free from unreasonable searches and seizures that violate the Fourth Amendment. Since then, the Supreme Court has expanded *Bivens* to only two additional causes of action:

> a claim of gender discrimination in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a claim by an employee against her employer, a Congressman, who had fired her); and a claim of cruel and unusual punishment in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a claim against the individual federal corrections officials who mistreated a prisoner). Significantly, the Supreme Court has never extended its holdings in these two cases beyond their context.

*Mejia-Mejia v. U.S. Immigration and Customs Enforcement*, No. 18-1445 (PLF), 2019 WL 4707150 at *4 (D.D.C. Sept. 26, 2019). "Expanding the *Bivens* remedy is now considered a disfavored judicial activity," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), and the Supreme Court "has consistently refused to extend *Bivens* to any new context or new category of defendants[,]" *id.* Although a *Bivens* claim in the Fifth Amendment equal-protection context was recognized in *Davis v. Passman*, the Court has not expanded this remedy to cover the prison context or a policy-based claim such as the one advanced by Plaintiff. "*Bivens* suits are not the appropriate mechanism to litigate objections to general government policies." *Mejia-Mejia*, 2019 WL 4707150 at *4. This is because the causes of action recognized in *Bivens* and its progeny generally lie against individuals who engage in direct, personal misconduct against a plaintiff, rather than those developing or applying government policy. *Id.* A civil complaint that "call[s] into question the formulation and implementation of a general policy" imposes a

12

"burden and demand" that might prevent Executive Branch officials "from devoting the time and effort required for the proper discharge of their duties." *Abbasi*, 137 S. Ct. at 1860. Because Plaintiff's claims do not fall within the class of claims recognized under *Bivens*, Plaintiff is not entitled to relief.

## **Intentional Infliction of Emotional Distress**

Plaintiff claims that Defendant has ignored its responsibility to provide adequate mental health care for her and for other women who live in fear of assault by transgender inmates and who are suffering emotional distress due to the violation of their religious freedom by forcing them to expose themselves to transgender inmates. *See* ECF No. 45 at 3. On this particular claim, Plaintiff states that she "is entitled to damages for her emotional distress." *Id.* Here, it appears that Plaintiff seeks monetary damages on a First Amendment right-to-privacy claim.

42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." In *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005), the United States Court of Appeals for the Fifth Circuit held:

> We agree with the majority of the other federal circuits that have addressed this issue in holding that it is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non recoverable, absent physical injury. (footnote omitted). Thus, as the district court correctly held, Geiger's failure to allege physical injury falls squarely under § 1997e(e)'s bar, precluding his recovery of compensatory damages for emotional or mental injuries allegedly suffered as a result of the purported First Amendment violation.

13

404 F.3d at 375 and n.11 (collecting cases). Here, Plaintiff does not identify any physical injuries resulting from the alleged First Amendment violation and she cannot recover monetary damages for mental or emotional injuries.

To the extent, if any, that Plaintiff seeks injunctive relief on this claim, she cannot prevail. Plaintiff's cause of action arose when she was confined in FMC Carswell in Fort Worth, Texas. Plaintiff has since been transferred to FCI Tallahassee in Tallahassee, Florida. The Court finds that Plaintiff's transfer to FCI Tallahassee renders any claims for injunctive relief at FMC Carswell moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (finding that an inmate's transfer to another prison rendered his claims for declaratory and injunctive relief moot). And the possibility of Plaintiff's transfer back to FMC Carswell is too speculative to warrant relief. *See Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir.1987). Additionally, the Court finds that the United States of America is entitled to sovereign immunity. *See Pinson v. Fed. Bureau of Prisons*, 647 F. App'x 375, 376 (5th Cir. 2016) (affirming the district court's determination that the Bureau of Prisons was entitled to sovereign immunity) (citing *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71B72 (2001)); *Gibson v. Federal Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 333 n.8 (5th Cir. 2002) (stating that the issue of sovereign immunity may be raised *sua sponte* as it bears on the court's subject matter jurisdiction).

### **Religious Freedom**

Plaintiff states that she is a Messianic Jewish inmate and believes in not disrobing in front of the opposite sex, which is a tenet of her faith. *See* ECF No. 45 at 3. Plaintiff states that

14

Defendant has forced her to violate her vows of modesty, which under the Religious Freedom Restoration Act of 1993 ("RFRA"), is a violation of her constitutionally protected religious beliefs. *Id.* Specifically, Plaintiff claims that "forcing her to expose her nudity to men or being exposed to their nudity . . . [d]uring random or routine searches" violates her religious freedom. *See* Plaintiff's Answer to the Court's Question No. 1, ECF No. 22 at 4.

The RFRA provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." 42 U.S.C. § 2000bb-1(a). Subsection (b) provides an exception pursuant to which the government may substantially burden a person's exercise of religion if (1) it furthers a compelling governmental interest; and (2) it is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000bb1-(b)(1) and (2). For Plaintiff to establish her RFRA claim she must prove that the United States substantially burdened the exercise of her sincerely held religious belief. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006) (recognizing that prima facie case under the RFRA is established by showing that a government requirement substantially burdens a sincere religious exercise).

Here, Plaintiff makes no claim that the policy of housing transgender inmates in a female prison requires her to expose her nudity to men or be exposed to their nudity. And she has failed to articulate facts that could demonstrate that Defendant was involved in forcing her to engage in any such exposure. *See* Plaintiff's Answer to the Court's Question No. 1, ECF No. 22 at 1-6. Her conclusory allegation that the United States has denied her religious freedom

15

through enactment of the Prison Rape Elimination Act of 2003 which resulted in the Bureau of Prisons' transgender policy, absent some factual support, is insufficient to maintain this claim. *See Coleman v. Lincoln Parish Detention Center*, 858 F.3d 307, 309 (5th Cir. 2017).

To the extent that Plaintiff purports to represent the interests of other female inmates confined in federal prison, she has no standing to do so. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *O'Hair v. White*, 675 F.2d 680, 687 (5th Cir. 1982).

## Conclusion

The Court finds that Plaintiff Rhonda Fleming has failed to demonstrate that the Bureau of Prisons' policy of housing transgender inmates in the women's prison has resulted in a violation of her federal statutory or constitutional rights by Defendant United States.

For the foregoing reasons, this action is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

**SO ORDERED** this **31st day** of **March, 2021.**

Reed O'Connor
UNITED STATES DISTRICT JUDGE