TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

---

FROM: 20446009
TO:
SUBJECT: ND FLA OBJECTIONS-1
DATE: 03/01/2022 08:44:46 AM

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

RHONDA FLEMING

V.                        NO.  4:21-cv-325-MW-MJF

FEDERAL BUREAU OF PRISONS

PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATIONS

The Appellant files the following objections to the Magistrate Judge's Report and Recommendations:

1. The Plaintiff objects to being housed with anyone that was born a biological male, whether they have had a surgery to remove their genitalia or not.

The Plaintiff has been housed with male inmates that have had a surgery to make them a "woman" and those that have not. Their behavior is the same. These men are aggressive, hostile because they are not actually women, violent, and disrespectful to women inmates. They intimidate us because they are aware of their superior strength over women. They use their size and strength to take over the housing units, just as men in prisons do to other male inmates.

Most of them identify as lesbian women, which is truly an insult to true lesbian women, those born biological women. These men openly express and participate in sexual activity with women in the prison. The women inmates that are having sex with these male inmates do not even acknowledge them as being women.

In California, women have already become pregnant from having sex with male inmates in women's state prison. Some are claiming they were raped.

2. The R & R suggest dismissal with prejudice, for abuse of process and as malicious, claims against all Defendants, with the exception of Defendant Warden Strong, is not based on case law precedent and the facts of the present case.

The R &R states that after the Plaintiff's initial case against the Government on the matter of biological males in women's federal prisons was dismissed, the Plaintiff filed another similar complaint, and this was an abuse of process and malicious.

The Plaintiff had no choice but to file another complaint. The district court in the Northern District of Texas stated that the Plaintiff could not obtain declaratory or injunctive relief because she had been transferred from FMC Carswell to FCI Tallahassee, therefore, it was unlikely that the Plaintiff could prove she would be housed again at FMC Carswell. Please see, Document 14-5, N.D. Texas district court opinion attached to R & R, stating, "The Court finds that Plaintiff's transfer to FCI-Tallahassee renders any claims for injunctive relief moot." While the Plaintiff did not agree with this decision, it was based on case law for the circuit.

Additionally, the Plaintiff was in a much worse and a factually different housing situation: living in an open dorm, in bunk beds head-to-head or side-by-side, only 2 or 3 inches apart from other inmates. The shower and toilet areas left the women more openly exposed than at FMC Carswell. The Plaintiff was able to identify at least two inmates in her housing unit that was a biological males, under conditions that were different from FMC Carswell and in violation of Eleventh Circuit case precedent on bodily privacy.

At FMC Carswell, the Plaintiff was in a room, albeit without a door, and to her knowledge, no male inmates were in this housing unit. The toilet stalls and shower stalls had doors, while at FCI-Tallahassee, there are mere pieces of torn up shower curtains, which allow any person to easily see the person using the toilet or shower nude.

By recommending that the claims be dismissed against the other Defendants, for the reasons given, that when a prisoner loses a case in one district, but there rights are violated again in another district, they are denied their constitutional right to be heard on claims under new facts, new state laws, and other circumstances.

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S
------------------------------------------------------------------------

The Plaintiff was not untruthful and correctly answered the form that she had not filed claims on the same facts or issue. The facts of the present case are different because of the housing conditions and the Plaintiff could actually identify males in the housing units: Ebony Taylor and Chesney Jones, both of which have histories of violence.

None of the claims or Defendants should be dismissed. This is a case of national significance. For once and for all, this matter should be decided by a fair circuit, the Eleventh Circuit district and/or appellate courts. There should be a thorough review of this case for the good of our country, irrespective of Plaintiff Rhonda Fleming's past litigation.

This matter is larger than one federal inmate. If a president can do this to prisoners, he/she will and has done this to our children. Please note that in Virginia two young girls were raped in school bathrooms by a boy alleging he was a girl. This was caused by policies pushed by those that support transgenderism and the school superintendent hide the rape.

This case is distinctly different is because we have a different president with a different ideology. President Biden issued Executive Order 13988 which effectively rescinds the BOP Transgender policy. This Executive Order has forced the military and colleges to allow males to live with females in barracks and dorms.

For these reasons, it is not appropriate to dismiss the claims against any of the Defendants.

3. The Plaintiff has presented a plausible 8th Amendment violation on her conditions of confinement claim.

The Plaintiff has a fundamental right to bodily privacy and to practice her religion. Denial of this right is a denial of the "minimal civilized measure of life's necessities." Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2000). To force a woman, several times a day, to expose her nudity to the opposite sex does unreasonable, serious damage to her mental, physical, and emotional health.

The Plaintiff's faith in God has sustained her for almost 15 years of incarceration for a white collar offense. Denial of her right to practice her religion, denied her the ability to stay sane, mentally fit, in a dark place, which is what a prison is.

It would be hard for a man that has never been sexually assaulted, as the Plaintiff has in prison, twice, to understand how the present conditions affect the Plaintiff physically, mentally, and emotionally. It is no different from slavery. Slaves were forced to perform sexual acts and/or disrobe wherever they were told to do so, to include on the slave block when they were sold, in the presence of large crowds.

The Plaintiff is not being bringing up slavery as an affront to white Americans, but for the Court to consider is there any difference for women in federal custody under the present BOP Transgender Policy/sexual misconduct of staff and sexual slavery in the 1800s. The Plaintiff and other women, can be ordered to be stripped searched in groups. This means that the Plaintiff would be stripped of all clothing in the presence of a biological male inmate.

At this time, the warden and chaplain, along with several others formerly employed by the BOP at FCI-Dublin, are charged with sexual abuse of women--forcible sexual assault. This is not the first time or the last time or a rare occurrence. In 2006, FCI-Tallahassee was the scene of the murder of a U.S. Marshal that came to arrest a gang of prison officials that were raping women. Several of the women inmates contracted HIV after being forced to have sex with male staff.

This Court continues to sentence former BOP officials that have sexually abused women inmates at FCI-Tallahassee. Other courts routinely have to deal with the same egregious misconduct. A chaplain at FMC-Carswell and many others, to include a female correctional officer were convicted of sexually abusing women inmates.

The BOP Transgender policy is worse than correctional staff sexually abusing women inmates. At least these people go home and the victim has some hours away from the predator. At this time, these new sexual predators, male inmates, are in the showers and other intimate areas with women, 24 hours a day.

And if a woman speaks against the policy, that woman is severely beaten or threatened by the male inmates. The Court may review the records of Darnell Nash and Donald Collins, both men that were housed with women, that have a disciplinary history of abusing women inmates.

Based on these facts, the Plaintiff has met the objective component showing of a deprivation or injury, of which it is both.

The Plaintiff has also met the subjective component, that officials had a sufficiently culpable state of mind:

2

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S
---

A. Knowledge of a risk of harm, is obviously apparent, where male inmates are allowed to shower with women, there is a risk of serious harm. Common sense that men with life sentences, like Inmate Peter Langan, would take advantage of this situation. 99% of people that grew up with brothers and sisters, were raised in a home where boys share a bedroom and girls shared a bedroom. Why? Because society recognizes the difference in sexes. The prison officials knew better but disregarded the risk due to political motivations.

B. The Defendants disregarded the risk--it is clearly established that women have a fundamental right to bodily privacy from the opposite sex in this circuit. Placing men in a women's prison with the Plaintiff and other women, was an act that disregarded the risk of physical, mental, and emotional harm, as well as violating the constitutional rights of women, whom have historically been treated as second class citizens in America. Ten years ago, male officers in the BOP were still allowed to pat search women, in violation of their right to bodily privacy and religious freedom. A woman had to sue to stop this policy. Please see, Forde v. Baird, 720 F. Supp. 2d 170 (D. Conn. 2010)(holding that the woman inmate had a constitutional right to be free from non-emergency pat searches by male correctional officers). Considering the Forde case, if male correctional officers cannot enter shower/toilet areas, except under exigent circumstances, or pat search women inmates, clearly the Defendants knew that male inmates should not have any possible chance of touching or viewing a woman naked, on a daily basis. It is preposterous to believe that the Defendants did not disregard the risks.

C. The conduct of the Defendants was more than mere negligence. Federal prisons are no longer coed for a reason. Even when the BOP was coed, men and women did not share the same housing units or intimate facilities. However, they were still able to have sex and women became pregnant. Some requested abortions at the expense of the taxpayer, during the Reagan Administration. Other women complained of sexual harassment by male inmates. A new policy was instituted and federal prisons were no longer coed. However, sometimes women were held with men in the Special Housing Units. Please see, Lucas v. White, 63 F. Supp. 2d 1046 (N.D. Cal. 1999). In the Lucas case, women were held in the SHU where male inmates were also held. Correctional officers allowed the male inmates out of their cells to sexually harass and assault the women in the SHU. The cell doors were opened and the women were sodomized and raped. The Plaintiff respectfully moves the Court to read the Lucas case. This is what happens when violent, criminal male inmates are placed with women. Again, the Lucas case caused new policies in the BOP to be put in place to prevent sexual abuse of women. It has not stopped. Before the BOP can place male inmates with women, they have to gain control of their male staff from sexually abusing women inmates. The Defendants are more than aware they have serious problems with the sexual abuse of women in their custody, therefore, it was more than mere negligence to place men in the prison with the Plaintiff and other women.

The R & R states that complaint is "devoid of specific factual allegations," (page-23), yet also states the Transgender Policy is a "formal national policy."(page-19) Clearly, the Defendants know that the sexual abuse of women and transgender policy are the two most controversial issues in the BOP. By implementing the Transgender Policy, solely on the basis of a man self-identifying as a woman, the Defendants knew of the risk and ignored them. The BOP Director and others are responsible for the harm caused to the Plaintiff and other women.

Most of the general public do not know that the federal government is forcing women to live with biological males that allege they are women. If it were widely known, as is the case with transgender men using women's bathroom, this matter would be widely discussed and debated.

The Plaintiff has met the standard of an 8th Amendment violation, Cruel and Unusual Punishment, with deliberate indifference by prison officials. It is cruel and unusual punishment to force any woman to be naked in the presence of the opposite sex.

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S
---

FROM: 20446009
TO:
SUBJECT: ND FLA OBJECTIONS-2
DATE: 03/01/2022 08:49:50 AM

D. The Court should exercise supplemental jurisdiction over any state-law claims against Carajval and Unknown Government Officials.

As stated in the other sections, all Defendants should be held accountable for their actions, whether under state or federal laws.

E. The Plaintiff has present a meritorious claim under the RFRA and the First Amendment against all Defendants.

There is a causal connection between all of the Defendants and the particular conditions of confinement at FCI-Tallahassee.

Defendant Warden Strong is a policymaker and policy enforcer. The Transgender Policy was promulgated in Washington, DC and Defendant Warden Strong knew the policy was unconstitutional, yet still presently enforces this policy.

Be that as it may, the Transgender Policy originates at the DOJ-BOP, in the District of Columbia, which is under the control of Defendant Director Carajval and other Unknown Government Officials. These Defendants have read the policy and issued orders on implementing the policy. They managed and guided all prison wardens in implementing the policy from Washington, DC. In fact, right now, the Plaintiff cannot be transferred anywhere (with the exception of a court order) without special permission from the U.S. Attorney's Office in Texas and the BOP officials in Washington, due to her litigation in the previous transgender case. So, these officials are aware that the Transgender Policy was being enforced against the Plaintiff, with their consent.

All Defendants have a causal connection to the Transgender Policy that has violated the constitutional rights of the Plaintiff and all women in federal custody.

F. The Plaintiff has presented a basis for habeas corpus relief pursuant to 28 USC Section 2241.

The Plaintiff is not requesting release from custody, as stated in the R & R. The Plaintiff is suing for a transfer to a less restrictive form of custody, home confinement. See, Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991)(holding that habeas appropriate where relief sought is a "quantum change in level of custody).

Because it is widely debated, intra-circuit, whether such a claim should receive relief pursuant to Section 1983 or Section 2241, both of which are civil actions, it is appropriate for this claim to proceed as it has been presented.

The R & R cited Daker v. Warden, 805 F. App'x 648, 651 (11th Cir. 2020), stating that the circuit court held that the First and Eighth Amendment claims were not "cognizable under the mutually exclusive remedy of habeas corpus." This is not correct. In Daker, Section 2254 was raised in an action involving a state prisoner. The court stated that Section 2254 and Section 1983 were mutually exclusive. Section 2241 was not cited and is very different from Section 2254.

The R & R does not cite any case law precedent in support of its statement that "civil rights actions and habeas corpus actions are mutually exclusive." (page-31). The Court has personal jurisdiction over the custodian of the Plaintiff and there is no federal rule or law that prevents the Court from granting damages under one section and transfer, habeas corpus relief, under another section, in the same case. There is no Supreme Court case or Eleventh Circuit case that bars this claim from continuing as it has been presented.

Recently, a criminal defendant, Hannah Tubbs, a man that says he is a woman, was heard bragging about getting probation after sexually abusing a 10 year old child. The Plaintiff does not want to live in fear of sexual assault or getting beaten up by a man, when it is likely, the man knows he will not be punished.

CONCLUSION

At this time, men that allege they are women have the upper-hand in this matter. The correctional staff is afraid to discipline these men our of fear of being called "transphobic." This has to be put to a stop for women inmates and correctional staff.

For the reasons stated, the Plaintiff respectfully objects to all recommendations for dismissal of claims as stated in the Report and Recommendation.

4

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

----------------------------------------------------------------------------------

Respectfully Submitted,

*Rhonda Fleming*, Plaintiff
March 1, 2022

#20446-009
FCI-Tallahassee
PO Box 5000
Tallahassee, FL 32314

CERTIFICATE OF SERVICE

The Defendants have not been formally served in this action, however, the Plaintiff will send a copy of the Objections to the U.S. Attorney's Office in Pensacola, FL.

*Rhonda Fleming*

Rhonda Fleming 20116-009
FCI-Tallahassee
PO Box 5000
Tallahassee, FL 32314

United States District Court
Office of the Clerk
111 North Adams Street
Tallahassee, FL 32301

Legal Mail