## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

RHONDA FLEMING,

      Plaintiff,

v.                                                      Case No.  4:21-cv-325-MW-MJF

ERICA STRONG,
WARDEN OF FCI-TALLAHASSEE,

      Defendant.

_____/

## THIRD REPORT AND RECOMMENDATION

This case is before the court upon Defendant Strong's motion to dismiss Plaintiff's remaining individual- and official-capacity claims against her. Docs. 51, 79. Plaintiff Rhonda Fleming responded in opposition to the motion. Docs. 58, 84, 85. The undersigned recommends that Strong's motion to dismiss be granted as to all of Fleming's federal claims except Fleming's official-capacity claim against the BOP seeking declaratory and injunctive relief for violation of her right to bodily privacy arising from the BOP's "Transgender Policy." The undersigned also recommends that the District Court decline to exercise supplemental jurisdiction over Fleming's individual-capacity state-law claims.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

# I. PROCEDURAL HISTORY

The background and procedural history of this case are outlined in the first report and recommendation issued by the undersigned on February 22, 2022. Doc. 14 ("First R&R"). In short, Fleming, a woman incarcerated by the Bureau of Prisons ("BOP"), objects to sharing housing—where cells, toilets, showers and other "intimate spaces" are in open view—with inmates who have male genitalia (*i.e.*, biologically male inmates).[2]

Proceeding *pro se*, Fleming initiated this action on July 28, 2021, by filing a complaint against the United States of America and several BOP officials. Doc. 1. Fleming challenged the BOP policy that authorizes prison officials to house biologically male prisoners in the same facilities as female prisoners ("Transgender Policy").[3] Fleming claimed that the Transgender Policy—and its enforcement—

---

[2] *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, ___ F.4th ___, 2022 WL 18003879, at *1 (11th Cir. Dec. 30, 2022) (en banc) (defining the term "biological sex" as "sex based on chromosomal structure and anatomy at birth").

[3] Initially, the BOP's Transgender Policy was codified in Program Statement 5200.04, titled "Transgender Offender Manual." *See* Doc. 14, Attach. 1 (Program Statement 5200.04 (Jan. 18, 2017)). On May 11, 2018, the Transgender Offender Manual was revised. *See* Doc. 14, Attach. 2 (Change Notice to Program Statement 5200.04 CN-1 (May 11, 2018)). After Fleming initiated this civil action, the BOP rescinded the 2018 version of the Transgender Offender Manual and reissued the Transgender Offender Manual as Program Statement 5200.08. *See* Doc. 14, Attach. 3 (Program Statement 5200.08 (Jan. 13, 2022)). The BOP's Transgender Offender Manual still authorizes prison officials to house biologically male prisoners in female prisons. *Id.*

violates various of her constitutional and statutory rights. *Id*. Fleming also challenged particular conditions of confinement at the Federal Correctional Institution in Tallahassee, Florida ("FCI-Tallahassee"), which is where she was housed at the time she filed suit. Thereafter, Fleming filed an amended complaint which is the operative complaint. Doc. 10.

Fleming's amended complaint names five Defendants: the United States of America; the BOP; BOP Director Michael Carajval; FCI-Tallahassee Warden Erica Strong; and "Unknown Government Officials." *Id*. at 1-4.[4] The latter three Defendants (the "individual Defendants") are sued in their individual and official capacities. *Id*.

Fleming claims that the Defendants' promulgation and implementation of the BOP's Transgender Policy violates her rights under the First, Eighth, and Fifth/Fourteenth Amendments, as well as her statutory rights under the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb, *et seq*. Doc. 10 at 9-10. Fleming also challenges two particular conditions of confinement at FCI-Tallahassee that burden the exercise of her religious beliefs and her constitutional right to bodily privacy. *Id*. at 7, 9-10. In addition, Fleming claims that the Defendants were negligent and that they intentionally inflicted emotional and physical distress

---

[4] Citations to page numbers of Fleming's amended complaint are to the numbers appearing at the bottom right corner of the original document. These page numbers coincide with the numbers assigned by the court's Electronic Case Filing ("ECF") system.

on her by housing her with biologically male inmates. *Id*. at 10-11. As relief, Fleming seeks a declaration that the Transgender Policy is unconstitutional, an injunction providing her "an accommodation," and money damages (compensatory, punitive and nominal) along with any other relief the District Court deems appropriate. *Id*. at 12.

On April 5, 2022, the District Court dismissed all of Fleming's claims, except the following claims against Strong:

a.   Fleming's individual-capacity claim under the RFRA for substantially burdening Fleming's exercise of her religion by requiring her to expose her nudity to biologically male inmates and by requiring Fleming to use feminine pronouns when addressing or referring to biologically male inmates;

b.   Fleming's individual and official-capacity claims for violating Fleming's constitutional right to bodily privacy (comprised of a conditions-of-confinement claim against Strong individually, as well as a challenge to the BOP's Transgender Policy); and

c.   Fleming's individual-capacity state-law tort claims.

*See* Docs. 14, 17.

## II.  STRONG'S MOTION TO DISMISS AND FLEMING'S RESPONSE

Strong moves to dismiss Fleming's amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 51. Strong asserts four grounds for dismissal: (1) Fleming failed to exhaust her administrative remedies as required by 42 U.S.C. § 1997e(a); (2) Fleming's amended complaint fails to state a claim under *Bivens*,[5] the RFRA, and Florida law; (3) Strong is entitled to qualified immunity from Fleming's individual-capacity constitutional and RFRA claims for damages; and (4) Fleming's individual-capacity claims for equitable relief against Strong became moot when the BOP transferred Fleming from FCI-Tallahassee to FCI-Dublin. Doc. 51 at 8-14.

Fleming responds that the motion to dismiss should be denied because (1) Strong's response to her amended complaint was late; (2) Fleming fully exhausted her conditions-of-confinement claims by filing a BP-9 grievance in December 2018, followed by a BP-10 grievance; (3) the BOP's Administrative Remedy Program was unavailable to challenge her conditions-of-confinement claims, or to challenge the BOP's Transgender Policy; (4) this District Court previously determined that all of Fleming's remaining claims against Strong are facially plausible; and (5) Strong is not entitled to qualified immunity because Strong violated Fleming's clearly established rights to bodily privacy and religious freedom. Docs. 58, 84, 85.

---

[5] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

### III. DISCUSSION

### A. Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint, or any claim therein, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a claim to survive dismissal, the "complaint must contain sufficient factual matter, accepted as true," to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Allegations that merely suggest the possibility that a defendant acted unlawfully are insufficient; the allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Additionally, "[m]ere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (internal quotation marks and alteration omitted) (quoting *Iqbal*, 556 U.S. at 678).

Under Rule 12(b)(6), the court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th

931, 934 (11th Cir. 2022). Courts also "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But courts "cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

**B.**   **Fleming's Individual-Capacity Claim Pursuant to the RFRA**

Fleming alleges that a tenet of her faith is "tznuit/modesty as stated in the Torah/Holy Bible," which "requires that she not expose her nude or partially nude body to the opposite sex." Doc. 10 at ¶¶ 6, 14. Fleming claims that Strong violated her clearly established right to freely exercise her religion by housing biologically male inmates in open dormitories with female inmates, thereby forcing Fleming to expose her nude or partially nude body to the male inmates. Fleming explains:

> The Plaintiff has been forced to share intimate spaces with male inmates, in open dorms, 24 hours a day. There is absolutely no ability for a woman to shield herself from exposing her nudity in open dorms at FCI-Tallahassee.
>
> . . . .
>
> The Plaintiff has to expose herself several times a day, when showering or using the toilet.

Doc. 10 at 7, ¶¶ 2, 5-6.

Fleming also alleges that as part of her religious faith, she "does not believe in transgenderism" and "refuses to participate in supporting" it. Doc. 10 at 7, ¶ 6. Fleming claims that Strong violated her clearly established right to exercise her

religion by indoctrinating and forcing her to use female pronouns when addressing or referring to biologically male inmates. *Id*. at ¶ 3.

Strong asserts that the RFRA claim should be dismissed because (1) Fleming failed to exhaust her available administrative remedies; (2) Strong is entitled to qualified immunity from damages liability; and (3) Fleming's transfer to another federal prison mooted her claim for declaratory and injunctive relief. Docs. 51 at 6-14. The court need not address the exhaustion issue, because dismissal is warranted on the latter two bases.

### 1.    *Strong Is Entitled to Qualified Immunity on the Damages Claim*

"Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be entitled to qualified immunity, the defendant must first establish that [s]he was acting within the scope of h[er] discretionary authority." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)).

Once that is shown, and it is undisputed here, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate." *Gaines*, 871 F.3d at 1208. The plaintiff must prove that "(1) the defendant violated a constitutional right, and

(2) this right was clearly established at the time of the alleged violation." *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what [s]he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. ___ , 138 S. Ct. 577, 589 (2018) (internal quotation marks and citations omitted). "The unlawfulness of the act in question must be apparent in light of pre-existing law, but there is no requirement that the act have been previously held unlawful." *Kothmann v. Rosario*, 558 F. App'x 907, 911 (11th Cir. 2014) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "[B]road statements of principle can clearly establish law applicable in the future to different sets of detailed facts." *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010) (internal quotation marks omitted). For a broad principle "to establish clearly the law applicable to a specific set of facts facing a governmental official, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002) (internal quotation marks omitted).

Here, Fleming alleges that Strong violated rights she enjoys under the RFRA. Congress enacted the RFRA "to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014). Under the statute, the "Government shall not substantially burden a person's exercise of religion even

if the burden results from a rule of general applicability" unless the Government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(a), (b).

To establish a violation of the RFRA, Fleming must show that her exercise of religion has been substantially burdened. *Davila v. Gladden*, 777 F.3d 1198, 1204 (11th Cir. 2015). If Fleming makes that showing, "the Government must demonstrate that its challenged actions are in furtherance of a compelling governmental interest." *Id.* at 1205.

Strong argues that "[n]o well-pleaded factual allegations detail . . .whether Plaintiff sustained a substantial burden on her religious exercise" and even if Fleming met her burden, "Plaintiff's (vague) claim involves the exact sort of qualified immunity balancing test which 'almost always applies to shield the public servant defendant.'" Doc. 51 at 13 (quoting *Foy v. Holston*, 94 F.3d 1528, 1535 n.8 (11th Cir. 1996)).

The District Court need not decide whether Strong's alleged conduct violated RFRA, because even if it did, the law was not clearly established in December 2018, that Strong's conduct violated Fleming's right under RFRA to religious freedom.[6]

---

[6] Fleming's amended complaint does not indicate when she arrived at FCI-Tallahassee. Fleming's response to the motion to dismiss states that she first grieved the issue of being housed with biologically male inmates at FCI-Tallahassee in December 2018. *See* Doc. 58 at 1.

The law preexisting Strong's conduct did not compel the conclusion that Strong's actions—housing biologically male inmates in open dormitories with Fleming and other female inmates, and requiring Fleming to address and refer to them with female pronouns—violated RFRA. Fleming points to no case of the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court preexisting December 2018, that clearly established that rule, nor has the undersigned's research revealed any.

Fleming argues that *Davila, supra*, clearly established her right "to freedom to practice the tenets of her faith, specifically modesty, which includes not exposing her nudity to the opposite sex." Doc. 58 at 2. In *Davila*, however, the Eleventh Circuit did not decide whether prison officials' conduct—denying a prisoner access to his religious beads and shells—violated his rights under the RFRA. Rather, the Eleventh Circuit began and ended its analysis with the second prong of the qualified immunity analysis—"whether it was clearly established at the time of the incident that the Defendants violated Mr. Davila's constitutional rights." *Davila*, 777 F.3d at 1211. The court held: "Whether or not the District Court concludes that the Defendants violated Mr. Davila's rights under RFRA at trial, the law preexisting the Defendants' conduct did not compel the conclusion that their actions violated RFRA." *Davila*, 777 F.3d at 1211. The *Davila* case, therefore, cannot clearly establish Fleming's right under the RFRA in the Eleventh Circuit.

In sum, even if Fleming were successful at trial in establishing that Strong violated the RFRA, Strong would be protected by qualified immunity from individual liability. Fleming's individual-capacity RFRA claim against Strong for damages, therefore, should be dismissed with prejudice.

### 2. *The RFRA Claims For Declaratory and Injunctive Relief Are Moot*

Fleming's amended complaint seeks injunctive relief in the form of "provid[ing] an accommodation to the Plaintiff, such as permanent placement on home confinement for the duration of her remaining sentence." Doc. 10 at 12. Because Fleming no longer is confined at FCI-Tallahassee, her claims for injunctive relief against Strong *in her individual capacity* are moot. *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (prisoner's claims for declaratory and injunctive relief relating to conditions of confinement in prison at which he no longer was confined were moot); *Tucker v. Phyfer*, 819 F.2d 1030, 1035 (11th Cir. 1987) (prisoner's claim seeking declaratory relief regarding conditions in which he was held as a juvenile became moot when he reached age of majority). Fleming's individual-capacity claim under the RFRA against Strong for injunctive relief, therefore, should be dismissed without prejudice. *See Hood v. Dep't of Children and Families*, 700 F. App'x 988, 990 (11th Cir. 2017).

### C. <u>Fleming's Individual-Capacity Bodily-Privacy Claim</u>

Fleming also alleges that Strong violated Fleming's constitutional right to bodily privacy by housing biologically male inmates in open dormitories at FCI-

Tallahassee, where Fleming and other female inmates cannot shield their nude (or partially nude) bodies while toileting, bathing, and dressing. Fleming seeks money damages and injunctive relief against Strong.

Strong asserts that this individual-capacity claim should be dismissed because (1) Fleming failed to exhaust her available administrative remedies; (2) Fleming has no damages remedy under *Bivens*; (3) even if a remedy under *Bivens* exists, Strong is entitled to qualified immunity from damages liability; and (4) Fleming's transfer to another federal prison mooted her claim for declaratory and injunctive relief. Docs. 51 at 6-14. The court need not address the exhaustion and qualified immunity issues, because dismissal is warranted on the remaining two bases.

1.    ***Bivens Should Not Be Extended to This New Context***

In *Bivens*, the Supreme Court created a cause of action for damages under the Fourth Amendment "to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1854 (2017) (describing *Bivens*, 403 U.S. at 392, 396–97). *Bivens* involved federal agents who allegedly made a warrantless entry into a man's apartment, searched the apartment, and arrested the occupant without probable cause. *Bivens*, 403 U.S. at 389–90.

Since then, the Supreme Court has extended the *Bivens* remedy only twice. In *Davis v. Passman*, 442 U.S. 228, 244 (1979), the Court recognized an implied damages remedy under the "equal protection component" of the Fifth Amendment's Due Process Clause for a claim of sex-based employment discrimination against a United States Congressman for firing his female secretary. In *Carlson v. Green*, 446 U.S. 14 (1980), the Court recognized an implied damages remedy under the Eighth Amendment's Cruel and Unusual Punishments Clause for a claim of medical deliberate indifference against individual prison officials who denied a federal inmate medical care.

"Expanding the *Bivens* remedy is now considered a disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1857. In the 42 years since *Davis* and *Carlson*, "the Court has not implied additional causes of action under the Constitution." *Egbert v. Boule*, 596 U.S. ___, 142 S. Ct. 1793, 1802 (2022). Indeed, the Supreme Court has

declined—12 times—to "imply a similar cause of action for other alleged constitutional violations." *Egbert*, 142 S. Ct. at 1799-1800 (collecting 11 other cases). The reason is that the Court "ha[s] come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." *Egbert*, 142 S. Ct. at 1802 (internal quotation marks and citation omitted). The Court explained in *Egbert*:

> At bottom, creating a cause of action is a legislative endeavor. Courts engaged in that unenviable task must evaluate a range of policy considerations at least as broad as the range a legislature would consider. Those factors include economic and governmental concerns, administrative costs, and the impact on governmental operations systemwide. Unsurprisingly, Congress is far more competent than the Judiciary to weigh such policy considerations. And the Judiciary's authority to do so at all is, at best, uncertain.
>
> Nonetheless, rather than dispense with *Bivens* altogether, we have emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity. When asked to imply a *Bivens* action, our watchword is caution. If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, the courts must refrain from creating it. Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy. Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case, no *Bivens* action may lie.

*Egbert*, 142 S. Ct. at 1802-03 (alterations adopted) (internal quotation marks and citations omitted).

In *Egbert*, the Supreme Court reiterated the familiar two-step inquiry for analyzing a proposed *Bivens* claim. First, a court asks "whether the case presents 'a

new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 137 S. Ct. at 1859–60). Second, "if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 137 S. Ct. at 1858). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (quoting *Hernández v. Mesa*, 589 U. S. ___, 140 S. Ct. 735, 743 (2020)).

Boiled down to its essence, the two-step inquiry "resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. "[I]f there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate[,] . . . or even if there is the *potential* for such consequences, a court cannot afford a plaintiff a *Bivens* remedy. *Egbert*, 142 S. Ct. at 1805 (internal quotation marks and citation omitted).

Here, Fleming's constitutional bodily-privacy claim arising from being housed with transgender inmates of the opposite biological sex presents a new *Bivens* context. Neither *Bivens*, *Davis*, nor *Carlson* involved that constitutional right. *See Egbert*, 142 S. Ct. at 1807 ("[A] new context arises when there is a new 'constitutional right at issue.'" (quoting *Ziglar*, 137 S. Ct. at 1860)); *see also, e.g.,*

*Driever v. United States*, No. 19-1807 (TJK), 2020 WL 6135036, at *7 (D. D.C. Oct. 19, 2020) (concluding that former federal prisoner's identical bodily-privacy claims arising from being housed with transgender, biologically-male inmates "do not fall within the class of recognized *Bivens* claims"). This case also is different from *Bivens*, *Davis* and *Carlson* in that the alleged constitutional violation occurred in the context of Strong implementing a high-level BOP policy—one Strong did not create—as part of her duties as Warden.

Special factors counsel hesitation in extending the *Bivens* remedy to this new context. Fleming is challenging a prison warden's implementation of a high-level, large-scale policy decision to allow biologically male inmates to be housed in female prisons with open dormitories. A court cannot predict the systemwide consequences of recognizing a damages remedy under *Bivens* for this type of claim against a BOP warden. Fleming's claim implicates policy, administrative, and economic decisions. This uncertainty, alone, "is a special factor that forecloses relief." *Egbert*, 142 S. Ct. at 1803–04; *see also Ziglar*, 137 S. Ct. at 1860, 1862–63 (declining to extend a *Bivens* cause of action to federal detainees who sought to challenge a large-scale policy decision concerning the conditions of confinement imposed on hundreds of prisoners; "[A] *Bivens* action is not a proper vehicle for altering an entity's policy."); *Tate v. Harmon*, 54 F.4th 839 (4th Cir. 2022) (declining to extend a *Bivens* cause of action to federal prisoner who claimed that prison officials violated the Eighth Amendment by exposing him to "degenerate" housing conditions).

Equally important—and as the Court discussed in *Egbert*—"[r]ecognizing any new *Bivens* action 'entail[s] substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Egbert*, 142 S. Ct. at 1807 (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Extending *Bivens* to the new context Fleming's claim proposes would pose significant risk of increasing such costs.

A final factor counseling hesitation is the existence of "legislative action suggesting that Congress does not want a damages remedy." *Ziglar*, 137 S. Ct. at 1865. In declining to recognize a *Bivens* action in *Ziglar*, the Court noted that after *Carlson* was decided, Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"). The PLRA "does not provide for a standalone damages remedy against federal jailers." *Ziglar*, 137 S. Ct. at 1865. "It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Ziglar*, 137 S. Ct. at 1865.

For all of the above reasons, *Bivens* should not be extended to Fleming's individual-capacity damages claim against Strong for violating Fleming's

constitutional right to bodily privacy.[7] Rather, the District Court should dismiss this claim with prejudice.[8]

### 2. The Individual-Capacity Claims for Equitable Relief Are Moot

As discussed above, Fleming's individual-capacity claims against Strong for declaratory and injunctive relief should be dismissed without prejudice because they were mooted when the BOP transferred Fleming to FCI-Dublin in California.

### D. Fleming's Official-Capacity Bodily-Privacy Claim

Fleming's remaining federal claim is a challenge to the BOP's Transgender Policy on the ground that it violates her constitutional right to bodily privacy. Fleming asserts this claim against Strong in her official capacity, which is in essence a claim against the Government.[9] Fleming alleges that the policy authorizes inmates

---

[7] The undersigned noted in the First R&R that although Fleming's allegations stated a plausible violation of her constitutional right to bodily privacy, her remedy might be confined to declaratory and injunctive relief. *See* Doc. 14 at 25. This court did not decide whether a *Bivens* action for damages would be available. At that time, Fleming still was confined at FCI-Tallahassee.

[8] As noted in the First R&R, any individual-capacity *Bivens* claim against Strong for violating Fleming's religious-exercise rights under the First Amendment suffers the same fate. *See* Doc. 14 at 28 n.8 (noting that Fleming does not have a cause of action under *Bivens* against Strong for the violation of her First-Amendment right under the Free Exercise Clause).

[9] "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690, n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166.

with male genitalia to be housed in female prisons which—due to their physical layout—provide no privacy for toileting, showering, or dressing. Fleming claims that since 2015, she has been forced to expose her nude (or partially nude) body to biologically male inmates while toileting, showering, and dressing.

In the section of the Government's motion to dismiss that addresses Fleming's individual-capacity, conditions-of-confinement claim against Strong under *Bivens*, the Government appears to suggest that Fleming's official-capacity, constitutional bodily-privacy claim for declaratory and injunctive relief also should be dismissed for failure to state a claim. The Government maintains that (1) Fleming's allegations are "inherently vague;" and (2) prisoner classification and housing decisions "lie within the discretion of the Attorney General." Doc. 51 at 8-9.

### 1.    *Plausible Allegation of a Violation of the Right to Bodily Privacy*

The allegations of Fleming's amended complaint are not inherently vague. Fleming alleges that pursuant to the Transgender Policy: (1) she "has been housed with biological males at all federal prisons since at least 2015;" (2) she "has been forced to share intimate spaces with male inmates, in open dorms, 24 hours a day;" and (3) she has been compelled "to expose herself several times a day, when showering or using the toilet." Doc. 10 at 7. These allegations state a plausible claim for declaratory and injunctive relief against the Government (*i.e.,* Strong in her official capacity) for violating Fleming's constitutional right to bodily privacy.

In *Fortner v. Thomas*, 983 F.2d 1024 (11th Cir. 1993), the Eleventh Circuit recognized "a prisoner's constitutional right to bodily privacy because most people have 'a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating.'" *Fortner*, 983 F.2d at 1030 (quoting *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981)) (other citations omitted); *see also Kent v. Johnson*, 821 F.2d 1220, 1226–27 (6th Cir. 1987) (male prisoner stated constitutional bodily-privacy claim in challenging prison authorities' practice of according female prison guards full and unrestricted access to all areas of male prison housing unit; "[A]ssuming that there is some vestige of the right to privacy retained by . . . prisoners and that this right protects them from being forced unnecessarily to expose their bodies to guards of the opposite sex, the instant complaint did state a constitutional claim upon which relief can be granted."); *Lee*, 641 F.2d at 1119 ("When not reasonably necessary, that sort of degradation [involuntary exposure of one's genitals in the presence of the opposite sex] is not to be visited upon those confined in our prisons."); *Harris v. Thigpen*, 941 F.2d 1495, 1513 n.26 (11th Cir. 1991) (prisoners retain certain fundamental rights of privacy, even though the precise nature and scope of the privacy right is far from settled).

Thus, because inmates retain some vestige of the right to bodily privacy, and this right protects them from being forced unnecessarily to expose their nude bodies to members of the opposite biological sex, Fleming's amended complaint states a

plausible constitutional bodily-privacy claim upon which declaratory and injunctive relief may be granted against the Government. Fleming alleges that the Government's Transgender Policy allows biologically male inmates to be housed in female prisons with open dormitories that offer no privacy in showering, toileting and dressing, thereby subjecting female inmates like Fleming to involuntary exposure of their nude bodies.

The Government's second argument for dismissal also fails. The Government argues:

> Allowing inmates to sue in federal court over official housing policies would be a drastic expansion of the law. Further, nearly every aspect of prison housing makes some segment of the inmate population unhappy. Diminished privacy is simply "a fact of prison life." *Robinson v. United States*, 80 F. App'x 494, 498 (7th Cir. 2003). So too is forcing inmates to share spaces with other individuals whose beliefs, appearance, or conduct they find distasteful. *See, e.g., Jehovah v. Clarke*, 798 F.3d 169, 180 (4th Cir. 2015) (addressing "general complaints of being assigned non-Christian cellmates"). These considerations would be especially difficult to second-guess in cases implicating transgender rights, which have been described as "implicat[ing] a fast-changing and rapidly-evolving set of issues." *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 287 (W.D. Pa. 2017). Additionally, it is not difficult to imagine lawsuits brought by transgender inmates themselves based upon difference in treatment for housing classification decisions.

Doc. 51 at 10 (footnote omitted).

Allowing Fleming to challenge the constitutionality of the BOP's policy is not a drastic expansion of the law. The Eleventh Circuit recognized as much in *Fortner* when it said:

> It is . . . settled that a prisoner's constitutional rights must be exercised with due regard for the "inordinately difficult undertaking" of modern prison administration. But, even though this court engages in a deferential review of the administrative decisions of prison authorities, the traditional deference does not mean that courts have abdicated their duty to protect those constitutional rights that a prisoner retains.

*Fornter*, 983 F.2d at 1029 (citing *Turner v. Safley*, 482 U.S. 78, 85 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Procunier v. Martinez*, 416 U.S. 396, 405–06 (1974) (recognizing that federal courts will discharge their duty to protect constitutional rights when prison regulations or practices offend fundamental constitutional guarantees), *overruled on other grounds, Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989)).

Additionally, as *Fornter*, recognized, compelling a prisoner to expose her nude body to members of the opposite sex is not "simply a fact of prison life." And contrary to the Government's characterization of Fleming's claim, her bodily-privacy claim involves more than a complaint about "sharing spaces" with those whose "beliefs, appearance, or conduct [she] find[s] distasteful." Fleming's claim involves compelled nudity to the opposite sex.

Ultimately the District Court will be called upon to assess the merits of Fleming's claim for declaratory and injunctive relief under the four factors articulated in *Turner v. Safely*, 482 U.S. at 89–91. *See Fortner*, 983 F.2d at 1030. But at this point—viewing the evidence in the light most favorable to Fleming—the

District Court cannot conclude a as a matter of law that the BOP Transgender Policy passes muster.

### 2.    *Exhaustion of Administrative Remedies*

The Government also asserts that all of Fleming's claims fail—including her official-capacity claim—because Fleming failed to properly exhaust her claim through the BOP's Administrative Remedy Program. Docs. 51, 79. Fleming opposes dismissal on this ground. Docs. 58, 84, 85.

### (a).    <u>The PLRA's Exhaustion Requirement</u>

The Prison Litigation Reform Act of 1995 ("PLRA") provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek injunctive relief, monetary damages, or both. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Exhaustion of available administrative remedies is a mandatory pre-condition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under [federal law] may be entertained."); see also *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998); *Zolicoffer v.*

*Scott*, 55 F. Supp. 2d 1372, 1375 (N.D. Ga. 1999), *aff'd*, 252 F.3d 440 (11th Cir. 2001) (holding that the exhaustion requirement of 42 U.S.C. § 1997e(a) applies to constitutional claims asserted under *Bivens*).

The Supreme Court has emphasized, however, that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth*, 532 U.S. at 738); *see also Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) ("A remedy has to be available before it must be exhausted."). In *Ross*, the Supreme Court the Court identified three kinds of circumstances "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 578 U.S. at 643.

The first circumstance is when the administrative procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643 (providing, as examples, "a prison handbook directs inmates to submit their grievances to a particular administrative office – but in practice that office disclaims the capacity to consider those petitions," or "if administrative officials have apparent authority, but decline ever to exercise it."). The second circumstance is when an administrative scheme exists to provide relief, "but no ordinary prisoner can discern or navigate it." *Id*. at 644. The third circumstance is "when prison administrators thwart inmates from taking advantage

of a grievance process through machination, misrepresentation, or intimidation." *Id*.
at 644.

### (b).   The BOP's Administrative Remedy Program

The BOP's Administrative Remedy Program provides a four-level
administrative grievance procedure for prisoner complaints. 28 C.F.R. §§ 542.10 -
542.16. Initially, an inmate must seek informal resolution of her concern by
presenting it informally to staff. *Id*. at § 542.13(a). If the issue is not resolved, the
inmate must file a formal written Administrative Remedy Request (Form BP-9) with
the institution. *Id*. at § 542.14. If dissatisfied with the Warden's response, the inmate
must file an appeal (Form BP-10) to the Regional Director. *Id*. at § 542.15(a)-(b). If
dissatisfied with the Regional Director's response, the inmate must appeal (Form
BP-11) to the BOP's General Counsel. *Id*.

The BOP's Administrative Remedy Program provides exceptions to the
requirement that inmates first file at the institutional level. *See* 28 C.F.R. §
542.15(d). One exception is for "[o]ther requests for formal review of decisions not
originating from the Warden." 28 C.F.R. § 542.14(d)(5). For those requests, this
provision applies:

> [F]ormal administrative remedy requests regarding initial decisions that
> did not originate with the Warden, or his/her staff, may be initially filed
> with the Bureau office which made the original decision, and appealed
> directly to the General Counsel.

28 C.F.R. § 542.14(d)(5) (2010).

### (c).   The Exhaustion Defense And Fleming's Response

When the Government first raised the exhaustion defense, it asserted that

Fleming failed to *properly* exhaust her administrative remedies because:

> Plaintiff filed Administrative Remedy 968006-F1 (at the warden/facility level) on February 15, 2019, four days after she filed at the region level. Ex. 1, p. 11. The "regional" step in the administrative remedy process is only available after the warden has formally responded to the inmate's complaint. *See* 28 C.F.R. § 542.15(a).

Doc. 51 at 8.

Fleming responded to that argument by asserting that the administrative

grievance procedure was not available to her. Doc. 58. Fleming explained that she

submitted a BP-9 grievance to the Warden's office in December 2018, objecting to

being housed with biologically male inmates, but the Administrative Remedy

Coordinator at FCI-Tallahassee, "routinely delayed and/or failed to enter grievances

into the remedy process system." Doc. 58 at 1. Thus, after the Warden's 20-day

response time expired with no reply, Fleming moved on to the next level of the

grievance process—consistent with the BOP's rules—and filed an appeal to the

Regional Director (BP-10). Doc. 58 at 1; *see also* 28 C.F.R. § 542.18 ("If the inmate

does not receive a response within the time allotted for reply, including extension,

the inmate may consider the absence of a response to be a denial at that level.").

Fleming's BP-10, however, was rejected on the procedural ground that Fleming

failed to first file at the institutional level.

The undersigned provided the Government the opportunity to supplement its exhaustion defense with additional materials and argument. Doc. 71. The Government now argues that Fleming *never* filed an administrative remedy concerning any of the issues raised in this lawsuit, and that Administrative Remedy 968006-F1 was unrelated to any of Fleming's current claims. Doc. 79 at 1; *see also* Marlow Decl. & Attachs.

Fleming's response to the Government's supplement takes two approaches. First, Fleming insists that she exhausted her claims through the BOP's administrative grievance process, and requests an evidentiary hearing "to prove she discussed this issue with FCI-Tallahassee employees and submitted grievances on this matter." Doc. 84 at 1. Fleming maintains, though, that she is unable to provide documentary evidence of exhaustion because six boxes of her legal property remain at FCI-Tallahassee. *Id*. Second, Fleming maintains that the Administrative Remedy Program was not available to exhaust her challenge to the BOP's Transgender policy. Fleming explains:

> [T]he decision to place biological male inmates in women's federal prisons, in large numbers, was made by the Executive Branch. The FBOP transgender policy is a political policy, which entailed political decision-making of which there was no remedy available from a prison official.

Doc. 85.

At the outset, the undersigned notes that Fleming's administrative tort claim—attached to her initial complaint in this case—did not exhaust her *constitutional*

challenge, on bodily-privacy grounds, to the BOP's Transgender Policy. *See* Doc. 1 at 21 (denial of Fleming's administrative tort claim under the FTCA).[10] Constitutional claims are distinguishable from claims under the Federal Tort Claims Act—both substantively and for purposes of administrative exhaustion. *See* 28 C.F.R. §§ 543.30 – 543.32 (statutorily-mandated procedures for prisoners filing federal tort claims); 28 C.F.R. § 542.10(c) (recognizing that tort claims are governed by a different administrative exhaustion procedure than the BOP's Administrative Remedy Program).

As to Fleming's exhaustion of her *constitutional* bodily-privacy challenge to the Transgender Policy, Fleming's constitutional challenge to the Transgender Policy on bodily-privacy grounds concerns a decision that did not originate with Warden Strong. Thus, Fleming was not required to file a BP-9 at the institutional level. To the extent the Administrative Remedy Program required Fleming to file a

---

[10] Fleming's administrative tort claim asserted that the BOP was violating her bodily privacy and religious freedoms by housing her with transgender inmates who were biologically male. Doc. 1 at 21. As relief, Fleming sought $100,000.00 in damages. *Id*. The BOP denied Fleming's administrative tort claim on July 9, 2021, as follows:

> We forwarded your claim for investigation and reviewed the information you provided as well as staff reports. The investigation did not reveal you suffered an injury caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment. Consequently, your claim must be denied.

Doc. 1 at 21.

grievance with "the Bureau office which made the original decision," 28 C.F.R. § 542.14(d)(5), the Government fails to identify which Bureau office Fleming was required to complain to, or the form she was required to use. To the extent some other administrative procedure or mechanism was available to Fleming to challenge the policy, the Government does not identify what that procedure was. *Cf.* 28 C.F.R. § 542.10(c) ("If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.").

The purpose of an administrative remedy—and of the PLRA's exhaustion requirement—is to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. 516, 524–25 (2002). No ordinary prisoner could discern, nor can the undersigned discern, what administrative procedure was available to challenge the large-scale policy decision to house biologically male inmates in female prisons with open dormitories. *See Ross*, 578 U.S. at 643–44; *Turner*, 541 F.3d at 1084 ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.").

The Government has not shown that Fleming failed to exhaust an available administrative remedy concerning her official-capacity challenge to the Transgender Policy on constitutional bodily-privacy grounds. This aspect of Strong's motion to dismiss should be denied.

**E.** **Florida Tort Claims**

Strong seeks dismissal of Fleming's individual-capacity state-law tort claims against her on the ground that they are conclusory. Doc. 51 at 8. Strong explains that Fleming "does not describe any incident in which she actually was forced to undress, expose herself, or use intimate facilities. Nor does she identify . . . how Warden Strong specifically harmed her." *Id*. at 8-9.[11]

If the District Court adopts this Report and Recommendation, the only remaining federal claim in this lawsuit will be Fleming's official-capacity claim for declaratory and injunctive relief relating to the constitutionality of the BOP's Transgender Policy. With all individual-capacity federal claims against Strong being dismissed, the District Court should decline to exercise supplemental jurisdiction over Fleming's individual-capacity Florida tort claims against Strong. 28 U.S.C. § 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

## IV. CONCLUSION

---

[11] The First R&R did not decide whether Fleming's amended complaint stated plausible claims for negligence and intentional infliction of emotional distress against Strong individually under state law. *See* Doc. 14 at 29.

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that:

1.    Defendant's motion to dismiss, Doc. 51, be **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.    Plaintiff's individual-capacity RFRA claim against Defendant Strong be **DISMISSED** because Strong is entitled to qualified immunity from damages and because Plaintiff's request for declaratory and injunctive relief against Strong is moot.

    b.    Plaintiff's individual-capacity constitutional bodily-privacy claim against Defendant Strong be **DISMISSED** because *Bivens* should not be extended to provide a damages remedy and because Plaintiff's request for declaratory and injunctive relief against Strong is moot.

    c.    Defendant's motion to dismiss be **DENIED** with regard to Plaintiff's official-capacity constitutional bodily-privacy claim seeking declaratory and injunctive relief concerning the BOP's Transgender Policy.

2.    The District Court **DECLINE** to exercise supplemental jurisdiction over Plaintiff's individual-capacity state-law claims against Defendant Strong, and **DISMISS** those claims without prejudice.

3.   The District Court return this case to the undersigned for further pretrial proceedings on Plaintiff's remaining federal claim, including her request for a temporary restraining order and preliminary injunction.

At Pensacola, Florida, this <u>25th</u> day of January, 2023.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**