UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RHONDA FLEMING,

    Plaintiff,

v.                                                Case No. 4:21-cv-325-MW-MJF

ERICA STRONG,
WARDEN OF FCI-TALLAHASSEE,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Rhonda Fleming has filed a motion for a preliminary injunction and a motion for an evidentiary hearing. Docs. 48, 57. Defendant opposes the motions. Docs. 68, 73. Fleming also has filed two motions seeking sanctions against Defendant's counsel. Docs. 69, 82. Defendant likewise opposes these motions. Docs. 77, 86. For the reasons set forth below, the District Court should deny Fleming's motions.

**I. BACKGROUND**

Fleming is a federal prisoner proceeding *pro se*. Fleming filed this lawsuit in August 2021, when she was confined at the Federal Correctional Institution in Marianna, Florida ("FCI Marianna"). Doc. 1. Initially, this case encompassed several claims against several Defendants relating to the BOP's Transgender Policy. That policy allows BOP officials to house inmates who self-identify as female in

Page 1 of 10

prisons which the BOP has designated for women. *See* Doc. 10 (Am. Compl.). The case now is proceeding on a single claim: Fleming's official-capacity claim seeking declaratory and injunctive relief against the government on the ground that the Transgender Policy violates Fleming's right to bodily privacy. *See* Docs. 17, 91.

During the pendency of this lawsuit, the BOP transferred Fleming to the Federal Correctional Institution in Dublin, California ("FCI Dublin"). Fleming filed her motion for a preliminary injunction while confined there. Doc. 48. Fleming remains confined at FCI Dublin.

Fleming is seeking "a nationwide injunction to remove all male inmates from women's prisons." Doc. 48 at 2. Alternatively, should the District Court deem that relief too broad, Fleming seeks the following:

- an injunction "barring the Director of the FBOP from allowing the transfer of any other biological male inmates into women's federal prisons while this case is pending;

- an injunction "barring the Director of the FBOP from housing the Plaintiff at any facility where biological male inmates are housed while this case is pending;

- a court order "instructing the Director of the FBOP and wardens assigned to women's federal prisons, to acknowledge the Order of the Court in writing."

Doc. 48 at 2.

Defendant opposes the motion. Defendant asserts that Fleming's allegations are too broad and conclusory to satisfy the requirements for preliminary injunctive relief. Docs. 68, 73.

## II. FLEMING'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED

### A. The Requirements for Preliminary Injunctive Relief

A preliminary injunction is an "extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). Indeed, the grant of a preliminary injunction is "the exception rather than the rule." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). The chief function of preliminary injunctions "is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990); *see Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (noting that a preliminary injunction's purpose "is merely to preserve the relative positions of the parties until a trial on the merits can be held").

To establish entitlement to a preliminary injunction, a movant must demonstrate:

1. a substantial likelihood of success on the merits of the underlying claim;
2. a substantial likelihood of suffering irreparable injury if the preliminary injunction is not granted;

> 3. that the threatened injury to the plaintiff outweighs any injury the nonmovant might suffer from the injunction; and
>
> 4. the injunction would not disserve the public interest.

*Winter*, 555 U.S. at 20; *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1290–91 (11th Cir. 2022); *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1254–55 (11th Cir. 2020); *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020). Failure to establish even one of the first two factors is fatal to a preliminary-injunction motion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.,* 887 F.2d 1535, 1537 (11th Cir. 1989).

When a plaintiff seeks injunctive relief concerning prison conditions, the Prison Litigation Reform Act imposes additional restrictions. *See* 18 U.S.C. § 3626. "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). "A preliminary injunction should be of the same character as the underlying suit and should not deal with ma[tt]ers that lie 'wholly outside' the issues presented in the lawsuit." *O'Connor v. Jones*, No. 20-11456, 2021 WL 3012653 (11th Cir. July 16, 2021) (unpublished opinion) (quoting *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir.), *opinion amended on reh'g*, 131 F.3d 950 (11th Cir. 1997)).

**B.** **<u>Fleming Fails to Satisfy the Requirements for a Preliminary Injunction</u>**

In support of her motion for a preliminary injunction, Fleming alleges that there is a substantial likelihood of success on the merits of her bodily-privacy claim in light of the Eleventh Circuit's holding in *Fortner v. Thomas*, 983 F.2d 1024 (11th Cir. 1993).[1] Doc. 48 at 1. Fleming goes on to argue that it would be a disservice to the public to deny her proposed preliminary injunction because female inmates can be impregnated by male inmates, which would require taxpayers to foot the bill for pregnancy-related medical care and child care. Doc. 48 at 2. Fleming maintains that Defendant will not be harmed by issuance of her proposed preliminary injunction, because the District Court "would be maintaining the status quo, which was the historical norm for hundreds of years, the segregation of males and females in housing units." Doc. 48 at 2. In that regard, Fleming notes that the BOP "was co-ed at one time, but men and women did not share housing units." *Id*. at 2.

With regard to the second *Winter* factor—a substantial likelihood of suffering irreparable injury if the preliminary injunction is not granted—Fleming asserts that she "is suffering irreparable harm everyday of her incarceration" because she "is being denied her right to bodily privacy, suffering emotional pain." Doc. 48 at 2. Fleming's motion for a preliminary injunction, however, does not support that

---

[1] Fleming also asserts that she has a substantial likelihood of success on her religious-freedom claims asserted under the Religious Freedom Restoration Act ("RFRA") in light of the Eleventh Circuit's holding in *Davila v. Gladden*, 777 F.3d 1198 (11th Cir. 2015). *See* Doc. 48 at 1. Fleming's RFRA claims, however, have been dismissed. *See* Docs. 17, 91. Thus, any allegations and corresponding requests for injunctive relief relating to those claims will not be considered.

conclusion with any specific facts indicating that Fleming is being compelled to expose her nude or partially nude body to biological-male inmates. *See* Doc. 48. Fleming's additional filings, Docs. 57, 78, bring her no closer to the mark.

Fleming's motion for an evidentiary hearing, filed last October, alleges that "last week the Defendant's employees placed a 'transgender inmate' in the cell with the Plaintiff." Doc. 57 at 1. Fleming, however, does not allege that the transgender inmate was a man. To the contrary, Fleming describes that there are "50 biological women at the prison [who] identify as 'trans-men,'" and that in response to her complaint about the transgender cellmate, a shift supervisor told her "that there are 'no men' at FCI-Dublin." *Id*. at 1. Additionally, Fleming makes a broad statement in her reply that, "the Plaintiff was forced to shower and use the toilet with men, daily, from 2015 to the filing of the Complaint, and beyond." Doc. 78 at 1. Again, though, Fleming does not allege that she currently is being housed with a man such that her right to bodily privacy is threatened.

Fleming's remaining, generalized allegations discuss the various dangers that men pose to women in federal prisons. Docs. 48, 57, 78.[2] These allegations,

---

[2] Such allegations describe (1) a past policy that allowed male correctional officers to pat-search female inmates; (2) past incidents at FMC Carswell where Fleming was housed with aggressive and threatening men; (3) past incidents where other female inmates were sexually assaulted by a male warden and a male chaplain; (4) an incident in an Indiana jail where male inmates sexually assaulted female inmates; (5) an incident in a New Jersey state prison where an inmate impregnated two other inmates; and (6) past incidents where BOP correctional officers were harassed and abused by male inmates. Docs. 48, 57.

however, are outside the scope of the single, narrow issue pending in this lawsuit—whether the BOP's current Transgender Policy violates Fleming's right to bodily privacy.

In short, Fleming's allegations—on their face—fail to establish that she is housed—or that there is a substantial likelihood she will be housed—with a man such that her right to bodily privacy is threatened. For that reason, the District Court should deny her motion and related request for an evidentiary hearing, with the understanding that should Fleming's housing circumstances change such that she satisfies the four *Winter* factors, she may file a new motion for a preliminary injunction.

### III.   FLEMING'S MOTIONS FOR SANCTIONS SHOULD BE DENIED

Fleming has filed two motions for sanctions, both of which relate to the Defendant's delayed response to her motion for a preliminary injunction. For background, on October 17, 2022, the undersigned ordered Defendant to respond to Fleming's motion for a preliminary injunction by November 1, 2022. Doc. 50. After that deadline passed, the undersigned ordered Defendant to show cause why the District Court should not deem Fleming's motion unopposed. Doc. 66. The very next day, Defendant responded to the show-cause order and explained that the response deadline "was inadvertently not calendared and simply missed." Doc. 67 at 1. Defendant's counsel "sincerely apologize[d] to the Court, and to Plaintiff, for this error and any delay it may cause in resolution of these issues" *Id*. at 1-2. Defendant's

show-cause response was accompanied by a response in opposition to Fleming's motion for a preliminary injunction. Doc. 68; *see also* Doc. 73.

Fleming's first motion for sanctions requests that the District Court deem her motion unopposed "[p]er the Local Rules" and, on that basis, grant her proposed preliminary injunction. Doc. 69 at 1. Presumably, Fleming is referring to Local Rule 7.1, which provides that: "The Court may grant a motion by default if an opposing party does not file a memorandum as required by this rule." N.D. Fla. Loc. R. 7.1(H).

Fleming's second motion requests that the District Court impose sanctions on Defendant's counsel under Rule 11 and 28 U.S.C. § 1927, based on "the Defendant's lack of candor and misrepresentations to the Court" with regard to the late-filed response. Doc. 82 at 1. Rule 11 of the Federal Rules of Civil Procedure provides that the court may sanction an attorney or party if it determines that Rule 11(b) has been violated. *See* Fed. R. Civ. P. 11(c). Section 1927 provides that: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

A calendaring oversight that causes a 14-day delay hardly satisfies the requirements for sanctions under the Local Rules, the Federal Rules, or 28 U.S.C. § 1927. There is no basis to find that Defendant's counsel vexatiously delayed

responding to Fleming's motion, or that the brief delay was a dilatory tactic employed for an improper purpose. Because the record does not support the imposition of sanctions, the District Court should deny Fleming's motions.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Plaintiff's "Motion for Ex Parte Temporary Restraining Order and/or Preliminary Injunction," Doc. 48, be **DENIED without prejudice**.

2. Plaintiff's "Motion for Evidentiary Hearing on Motion for Temporary Restraining Order and/or Preliminary Injunction," Doc. 57, be **DENIED**.

3. Plaintiff's "Motion for Relief on Unopposed Motion for Injunctive Relief," Doc. 69, be **DENIED**.

4. Plaintiff's "Motion for Rule 11 and 28 USC Section 1927 Sanctions," Doc. 82, be **DENIED**.

5. This matter be returned to the undersigned for further pre-trial proceedings on Plaintiff's official-capacity constitutional bodily-privacy claim seeking declaratory and injunctive relief against the United States concerning the BOP's Transgender Policy.

At Panama City, Florida, this <u>4th</u> day of April, 2023.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**