Exhibit D

DATE FILED: September 27, 2023 4:08 PM
FILING ID: 4862424B888FD
CASE NUMBER: 2019CV34492

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO** | |
| 1437 Bannock Street<br>Denver, CO 80202 | |
| KANDACE RAVEN, JANE GALLENTINE, TALIYAH MURPHY, AMBER MILLER, MEGAN GULLEY, LAVINYA KAPIERZ AND CUPCAKE RIVERS,<br><br>Plaintiffs, as representatives of themselves and all others similarly situated in this class action,<br><br>v.<br><br>JARED POLIS, Governor of Colorado, THE COLORADO DEPARTMENT OF CORRECTIONS, DEAN WILLIAMS, Executive Director of the Colorado Department of Corrections, individually and in his official capacity, TRAVIS TRANI, Director of Prisons, individually and in his official capacity, RANDOLPH MAUL, M.D., CDOC Chief Medical Officer, individually and in his official capacity, SARAH BUTLER, M.D., Chief of the Gender Dysphoria Committee and Chief of Psychiatry, individually and in her official capacity.<br><br>Defendants | |
| | **▲ COURT USE ONLY ▲** |
| *Attorneys for Plaintiffs:*<br>Paula Greisen, #19784, pg@greisenmedlock.com<br>Scott Medlock, #57210, sm@greisenmedlock.com<br>GREISEN MEDLOCK, LLC<br>6100 E. Colfax Avenue, Suite 4-216<br>Denver, Colorado 80220<br>Phone: (303) 876-7663<br><br>Lynly S. Egyes (20PHV627957)<br>Shawn Thomas Meerkamper (20PHV6258)<br>TRANSGENDER LAW CENTER<br>P.O. Box 70976 | Case No. 2019CV34492<br><br>Courtroom 203 |

Oakland, California 94612
Phone: (510) 587-9696
lynly@transgenderlawcenter.org
shawn@transgenderlawcenter.org

Suneeta Hazra, #54284
ARNOLD & PORTER KAYE SCHOLAR LLP
1144 Fifteenth Street, Suite 3100
Denver, Colorado 80202
Phone: (303) 863-2366
suneeta.hazra@arnoldporter.com

*Attorneys for Defendants CDOC, Williams, Trani,
Maul, M.D., and Butler, M.D.:*
PHILIP J. WEISER, Attorney General
HEATHER K. KELLY, #36052*
First Assistant Attorney General
REBECCA JOHANNESEN, #55799*
Second Assistant Attorney General
JACK D. PATTEN, III, #36882*
CHRISTOPHER J.L. DIEDRICH, #45213*
Senior Assistant Attorneys General
MARK C. LOCKEFEER, #57470*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
Phone: (720) 508-6593 (Kelly)
heather.kelly@coag.gov; jack.patten@coag.gov;
rebecca.johannesen@coag.gov
mark.lockefeer@coag.gov
christopher.diedrich@coag.gov
*Counsel of Record*

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
CONSENT DECREE**

Plaintiffs and Defendants Colorado Department of Corrections, Dean

Williams, Travis Trani, Randolph Maul, M.D., and Sarah Butler, M.D. (hereinafter

CDOC Defendants), through counsel, jointly[1] move this Court to grant preliminary approval to the class action Consent Decree attached to this motion as Exhibit 1. The grounds for this motion are as follows:

## INTRODUCTION

This is a civil rights putative class action brought on behalf of all transgender women who have been, are, or will be incarcerated by CDOC. The case raises complex issues involving the housing and medical and mental health treatment of transgender women in corrections. For over a year, counsel for Plaintiffs and CDOC Defendants have engaged in extensive settlement discussions to resolve the issues to be tried. These settlement discussions have now produced the proposed Consent Decree, attached hereto as **Exhibit 1**. The Consent Decree is the product of arm's-length, protracted, serious, and informed negotiations between knowledgeable counsel who have vigorously prosecuted and defended this litigation.

Plaintiffs and CDOC Defendants jointly request, for settlement purposes only: (a) preliminary settlement class certification; (b) preliminary approval of the Consent Decree; (c) approval of the class notice; and (d) scheduling a final fairness hearing and deadline for any objections or opt outs to be filed. While Plaintiffs and CDOC Defendants stipulate in the Consent Decree to certifying separate injunctive and damages classes under C.R.C.P. 23(b)(2) and 23(b)(3), Plaintiffs and CDOC

---

[1] **Certificate of Conferral pursuant to C.R.C.P. 121, § 1-15(8)**: Plaintiffs' and the CDOC Defendants jointly move for the relief requested herein. Defendant Governor Polis takes no position regarding the relief requested herein.

Defendants' agreement envisions certification of the Settlement Class as part of the fairness hearing. *See* C.R.C.P. 23(e). In this Joint Motion, Plaintiffs and CDOC Defendants request preliminary certification of these classes:[2]

> Under C.R.C.P. 23(b)(2): (Injunctive Class) persons who have been, are, or will be incarcerated in the CDOC and who have, at any time, identified themselves to CDOC during their incarceration as transgender women.

> Under C.R.C.P. 23(b)(3): (Damages Class) all persons who have been or are in CDOC's custody, who currently identify to CDOC as transgender women as of September 1, 2023, and who Class Counsel[3] have determined have alleged a qualifying injury up until September 1, 2023.

## LEGAL STANDARD

Courts routinely recognize settlement is "generally favored as a means of resolving class-action lawsuits." *Williams v. Nat. Sec. Ins. Co.*, 237 F.R.D. 685, 694 (M.D. Ala 2006) (citations omitted). "[C]ourts have held that the presumption in favor of voluntary settlement agreements 'is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Tuten v. United Airlines, Inc.*, 41 F. Supp. 2d 1003, 1007 (D. Colo. 2014) (citations omitted).

---

[2] Defendants reserve the right to contest certification of any class which is different than the classes outlined in the Consent Decree.

[3] For consistency with the Consent Decree, counsel for the putative class will be referred to as Class Counsel. The parties recognize 'class counsel' will be based upon the Court's entry of preliminary and final approval of the settlement class and appointment of class counsel.

C.R.C.P. 23 governs the settlement of certified class actions. Colo. R. Civ. P. 23(e); *see* Fed. R. Civ. P. 23; *see also Goebel v. Colo. Dept. of Inst'ns*, 764 P.2d 785, 794 n.12 (Colo. 1988) (holding that C.R.C.P. 23 is "virtually identical" to its federal analogue, and thus relied upon in interpreting the Colorado rule). The Court must consider the settlement as a whole, "rather than the individual component parts," to determine whether it is fair and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The settlement must stand or fall in its entirety").

> Approval of a class action settlement takes place in two stages. In the first stage, the court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement or opt out of the settlement. In the second stage, after notice is given to the putative class, the court holds a fairness hearing at which it will address the fairness, reasonableness, or adequacy of the settlement terms.

*Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (citations omitted).

Preliminary approval is not a commitment to approve the proposed settlement; rather, its purpose "is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). "Preliminary approval … is at most a determination that there is 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Ross*, 323 F.R.D. at 659 (citations and quotations omitted). "A proposed settlement of a class action should

therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id.* "The standards for preliminary approval are not as stringent as those applied for final approval." *Id.* Colorado courts have also followed this process. *See, e.g.*, *EnCana Oil & Gas (USA), Inc. v. Miller*, 2017 COA 112, ¶ 4.

"In evaluating a proposed settlement under C.R.C.P. 23(e), the trial court must determine whether the settlement is fundamentally fair, adequate, and reasonable." *Bruce W. Higley, D.D.S., M.S., P.A. Defined Benefit Plan v. Kidder, Peabody & Co.*, 920 P.2d 884, 891 (Colo. App. 1996).

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Helen G. Bonfils Foundation v. Denver Post Employees Stock Trust*, 674 P.2d 997, 998 (Colo. App. 1983). The Tenth Circuit has uses a similar, approach:

> In deciding whether to approve a class settlement, a district court considers whether (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.

*Tenille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015). Especially at this preliminary phase, the question is not "whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

## ARGUMENT

Preliminary approval is appropriate as the proposed Consent Decree is a fair and adequate resolution of Plaintiffs' claims, it is the product of serious, informed, non-collusive negotiations, and it treats Class Members equitably.

## I.     THE CONSENT DECREE IS THE PRODUCT OF SERIOUS, INFORMED, NON-COLLUSIVE NEGOTIATIONS AND TREATS CLASS MEMBERS EQUITABLY.

Preliminary approval should be granted where, among other factors, a proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Ross*, 323 F.R.D. at 659. That is the case here.

The putative class has been well-represented by their attorneys. Lead counsel for Plaintiffs have dedicated their careers to representing individuals claiming discrimination and they are recognized experts in discrimination against the LGBTQ+ community and the rights of incarcerated people. They are joined by the Transgender Law Center, the largest transgender-led civil rights organization in the United States, and Arnold & Porter, a preeminent national law firm. For their part, the Colorado defendants are represented by experienced litigators and class action

attorneys at the Colorado Department of Law, who have sought to protect the interests of the State of Colorado, its taxpayers, and both employees and incarcerated people of the Colorado Department of Corrections.

The road to the Consent Decree has been long and it has not been easy. At the outset, Plaintiffs and CDOC Defendants retained the Honorable Christina Habas, retired—who previously mediated similar issues—to mediate, as well as a neutral subject-matter expert to assist Judge Habas in addressing the complex issues raised in this case. That mediation helped Plaintiffs and CDOC Defendants to develop an initial framework for settlement, though they remained far apart on resolution of the injunctive relief. At numerous points, it appeared that the settlement discussions may not be fruitful, and indeed, the stay of proceedings ended when the Third Amended Case Management Order was entered on May 2, 2023. But Plaintiffs and CDOC Defendants continued to negotiate, and those protracted, substantive, good-faith negotiations ultimately produced the proposed Consent Decree. That proposed agreement resolves Plaintiffs' claims, innovatively approaches questions around the care and treatment of incarcerated transgender women, and seeks to ensure an individualized, considered assessment of a class member's housing, medical and mental healthcare needs. It also takes into account CDOC's legitimate safety and penological needs and requirements as well as the difficulty of structuring monetary relief for differently-situated Class Members.

All counsel likewise agree that Plaintiffs' attorney fees and costs will be determined after entry of the Consent Decree, will not be apportioned from the amount of damages paid to Damages Class Members, and will be independently determined by the Mediator. Thus, the proposed Consent Decree is the product of non-collusive dealings between counsel.

The proposed Consent Decree also provides that each of the Named Class Representatives shall receive "incentive" payments in the amount of $4,000. Incentive payments to named class representatives may be made when their assistance provides a benefit to the class or there is a risk in their participation as a class representative. *See Chieftain Royalty Co. v. Enervest Energy Inst. Fund, et al.*, 888 F.3d 455, 466–67 (10th Cir. 2017) (quotations omitted). Courts have explicitly approved incentive awards to named class members who provided valuable information and assistance on behalf of the Class. *See, e.g., In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1037–38 (8th Cir. 2002) (approving an award of $2,000 to each of five representative plaintiffs where the common fund consisted of $5 million to be split among a class of four million); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."); *Staton,* at 938 ("Our court has approved incentive awards of $5,000 each to the two class representatives of 5,400 potential class members in a settlement of $1.725 million") (citation omitted).

Here, the amount of incentive payments to each class representative is modest and Plaintiffs and CDOC Defendants do not dispute that the named representatives have provided valuable information to Class Counsel. Class Counsel further states that incarcerated persons are often reluctant to participate in cases against the prisons because of the fear of retaliation, and without the assistance of these representatives, it is extremely difficult to obtain systemic changes in the operation of prisons. Thus, the named representatives should be awarded these payments which are in addition to any other damages to which they may be entitled. Should the Court grant preliminary approval of the Consent Decree, Plaintiffs and CDOC Defendants will provide the Court with additional briefing regarding the fairness of the Consent Decree as directed by the Court prior to the final approval hearing.

## II.    THE CONSENT DEGREE IS A FAIR AND ADEQUATE RESOLUTION OF THE COMPLEX ISSUES PRESENTED BY PLAINTIFFS' CLAIMS.

Prior to the codification of the core factors that should guide a court's approval of a proposed settlement in the amended Fed. R. Civ. P. 23(e)(2), federal courts applied a presumption of fairness to settlement agreements resulting from arm's-length negotiations. *See, e.g.*, *Lucas*, 234 F.R.D. at 693 (applying presumption of fairness). The 2018 amendments to the federal rule no longer provide that presumption and established that as a prerequisite to a finding of fairness, reasonableness, and adequacy, parties must establish the settlement was a result of arm's-length negotiation, the relief to the class is fair, and adequate representation by Class Counsel and class representatives. Colorado has not amended Colo. R. Civ.

P. 23(e) to match those federal amendments, so Colorado courts may continue to presume fairness of a settlement where, as here, the settlement was negotiated at arm's length by competent, knowledgeable counsel. Nevertheless, Plaintiffs and CDOC Defendants respectfully submit that, even considering the above factors, the Consent Decree is fair and reasonable to all Class Members.

A.    *The Consent Decree Provides Meaningful Injunctive Relief.*

Plaintiffs have raised difficult constitutional and statutory issues regarding the housing of transgender women in Colorado correctional facilities, and Defendants face considerable challenges in housing inmates, seeking to reduce inmate-on-inmate violence, and doing so within strict budgetary constraints. The Consent Decree creates an innovative way forward, providing additional housing options for transgender women along with significant monetary compensation to Class Members. The Consent Decree creates two new prison housing units: a Voluntary Transgender Unit (VTU) at Sterling Correctional Facility (SCF), and the Integration Unit (IU) at the Denver Women's Correctional Facility (DWCF). Notably, neither unit could be created by CDOC unilaterally. Under the Prison Rape Elimination Act:

> The agency shall not place …. transgender … inmates in dedicated facilities, units, or wings solely on the basis of such identification or status, unless such placement is in a dedicated facility, unit, or wing established in connection with a consent decree, … for the purpose of protecting such inmates.

PREA Standard 115.242(f). The Consent Decree provides CDOC the tools to create these innovative, neutral-expert-approved housing options for transgender women.

In addition, the Consent Decree bolsters CDOC's Placement Review Committee, which will be comprised of medical and psychiatric experts as well as prison officials to determine eligibility for placement in those new units or in the general population of DWCF. The committee will examine each class member's individual factors to reach a considered decision as to the appropriate housing placement for that class member. The Consent Decree sets out what standards will be applied to medical and mental health decisions and provides for additional training of staff in those areas and additional programming for transgender woman.

Likewise, the Consent Decree substantially improves the medical and mental health care provided to Class Members, protects Class Members from cross-gender searches, provides Class Members access to women's canteen items (such as cosmetics), requires CDOC to appropriately identify Class Members, and provides improved training on transgender issues to CDOC staff, medical and mental health providers, and leadership.

B.   *The Consent Decree Provides Fair and Adequate Relief to the Damages Class Members.*

As for monetary damages, the Consent Decree provides for $2,150,000 in damages to be allocated to three tiers of recovery depending on the type and severity of injuries suffered, and with a minimum amount of damages for each Tier. Class Counsel (in consultation with Ret. Judge Habas) will determine the total amount of money allocated to each Tier. The amount paid all Tier 1 damage class members will be the same. The amount paid to all Tier 2 damage class members will be the same

for all members of that Tier.   Tier 3 damage class members will all get the minimum amount for that Tier and any additional amount as determined by the Mediator, Retired Judge Habas. The determinations of whether a person has a "qualifying injury" and the Tier of damages to which they are assigned will be made by Class Counsel based on a review of PREA complaints, other records that are being produced by CDOC, and other information. Damage awards will be allocated as follows:

> Tier 1 – No less than $1,000 – Damage Class Member who has suffered a non-nominal injury as a result of being a transgender woman during her incarceration in CDOC prisons. The sole fact an individual identifies as a transgender woman or the sole fact that CDOC has made transgender related policy changes is insufficient alone to state a qualifying injury.

> Tier 2 – No less than $5,000 – Damage Class Member who has suffered injury of a sexual nature or a serious bodily injury.

> Tier 3 – No less than $10,000 – Damage Class Member who has suffered multiple injuries of a sexual nature or multiple serious bodily injuries. Class Counsel will alone determine which individuals will be assigned to this Tier. Class Counsel and counsel for CDOC will submit information to the Mediator based on any specifications they determine, and the Mediator will make the final damage allocation to each person in this Tier.

> The Mediator will determine class counsel's attorneys' fees and costs after the completion of the damage allocation process.

Thus, the Consent Decree provides meaningful relief that thoughtfully and creatively addresses difficult issues surrounding the housing of transgender women in custody. Likewise, the proposed payments to Damages Class Members balance the uncertainty of recovery after trial with the certainty of providing real, immediate

financial compensation to Damages Class Members while distinguishing between the severity of injuries.

Importantly, the Consent Decree establishes that payments for Tiers 1 and 2 damages will be made within 90 days of entry of the Consent Decree, and the Tier 3 damages will be paid 60 days after the Mediator's determination. Protracted litigation, including possible appeals, would significantly delay relief to all Class Members. Thus, the Consent Decree, which affords significant and novel relief sought by Plaintiffs, is fair and adequate.

## III.    THE COURT SHOULD PRELIMINARILY CERTIFY THE INJUNCTIVE AND DAMAGES CLASSES.

"In order to attempt to gain approval of the class members, a class must be court sanctioned and defined." *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016) (citations omitted). Thus, preliminary certification of the classes is necessary prior to the sending of the required Notice. *See, e.g.*, *id.* For settlement purposes, Plaintiffs and CDOC Defendants jointly submit that certification of the classes identified above is appropriate under C.R.C.P. 23.

A.    *The Proposed Classes Satisfy the Requirements of C.R.C.P. 23(a).*

To certify a class action, "a trial court must ascertain whether the claims actually meet the preconditions of C.R.C.P. 23(a): numerosity, commonality, typicality, and adequacy of representation." *Jackson v. Unocal Corp.*, 262 P.3d 874, 880 (Colo. 2011). "Because C.R.C.P. 23 should be liberally construed in light of its policy favoring the maintenance of class actions, trial courts generally should accept

the plaintiff's allegations in support of certification." *Id.* at 881 (quotations omitted). Here, Plaintiffs and CDOC Defendants jointly submit Rule 23(a)'s requirements are satisfied.

First, the "class is so numerous that joinder of all members is impracticable." C.R.C.P. 23(a). Through discovery, Plaintiffs and CDOC Defendants have determined that the class consists of approximately 400 current and former CDOC inmates identify as transgender women, a number above that is commonly held to establish difficulty and inconvenience related to joinder. *See, e.g.*, *Pliego*, 313 F.R.D. at 125–26 (177 putative members satisfied numerosity requirement).

Second, "there are questions of law or fact common to the class." C.R.C.P. 23(a). "A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194–95 (10th Cir. 2010). Here, among others, common questions include whether CDOC policies regarding the housing, medical care, and mental health care of transgender women satisfy constitutional requirements. Where, as here, the case concerns state corrections policies that apply generally to the class, courts find the commonality prong satisfied. *See, e.g.*, *Yates v. Collier*, 868 F.3d 354, 362–63 (5th Cir. 2017) (commonality satisfied where putative class of Texas inmates challenged prison's policies).

Third, "the claims or defenses of the representative Plaintiffs and CDOC Defendants are typical of the claims or defenses of the class." C.R.C.P. 23(a). "Where the challenged conduct is a policy or practice that affects all class members, the

underlying issue with respect to typicality is similar to that presented with commonality...." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). The named plaintiffs here are thus "similarly positioned to all other ... inmates" with respect to the challenged CDOC policies. *See id.*; *see also Pliego*, 313 F.R.D. at 126 ("A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class.").

And fourth, "the representative Plaintiffs and CDOC Defendants will fairly and adequately protect the interests of the class." C.R.C.P. 23(a). This requirement concerns both Plaintiffs' Counsel's competence and the Class Representative's "willingness and ability to control the litigation and protect the interests of the class as a whole." *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010). If the named plaintiffs and counsel do not have conflicts of interest with other class members and the named plaintiffs and counsel will vigorously prosecute the action, this prong is satisfied. *See, e.g.*, *Pliego*, 313 F.R.D. at 126. "Absent evidence to the contrary, a presumption of adequate representation is invoked." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998). Here, as in *Pliego*, "it is clear from the settlement itself that Plaintiff[s] ha[ve] prosecuted the action vigorously on behalf of the class through counsel." 313 F.R.D. at 127. The Consent Decree contains substantial and innovative relief to address the difficult questions of housing transgender women inmates and providing them appropriate medical and mental health care. Plaintiffs' representation has thus been adequate.

B. *For settlement purposes, Plaintiffs and CDOC Defendants agree that certification of an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3) are both appropriate.*

In addition, Rule 23(a)'s requirements, a class action must also satisfy one provision of Rule 23(b). Under Rule 23(b)(2), certification is appropriate if the defendants "acted … on grounds generally applicable to the class, thereby making appropriate final injunctive relief … with respect to the class as a whole." And under Rule 23(b)(3), a class can be maintained if the court finds common questions of law or fact predominate and a class action is superior for resolving the claims.

Courts have "repeatedly invoked [Rule 23(b)(2)] to certify classes of inmates seeking declaratory and injunctive relief for alleged … Eighth Amendment violations." *Parsons*, 754 F.3d at 686-87; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples [of Rule 23(b)(2)]."). Indeed, the Southern District of Illinois certified a nearly identical class last year. *Monroe v. Meeks*, 584 F. Supp. 3d 643, 647 (S.D. Ill. 2022) (the class of transgender women in custody was certified in an order dated March 4, 2020).

As for Rule 23(b)(3), the "predominance inquiry focuses on whether the proof at trial will be predominantly common to the class or primarily individualized." *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011) (quotations omitted). "This is a fact-driven, pragmatic inquiry that often turns on whether the plaintiff advances a theory by which to disprove an element on a simultaneous, class-wide

basis, since such proof obviates the need to examine each class member's individual position." *Id.* (cleaned up); *see also Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019). Here, while individual damages would necessarily be addressed on an individual basis, that does not mean that individual issues predominate, so long as "one or more of the central issues in the action are common to the class and can be said to predominate." *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016). And, also here, those common issues for the Damages Class are the same as the injunctive class—common, class-wide policies and expert evidence on the increased risk of sexual and physical violence suffered by transgender women when housed with men. Thus, preliminary certification of the Rule 23(b)(3) settlement class is also appropriate.

## IV.    THE PROPOSED NOTICE FAIRLY APPRISES THE CLASS.

C.R.C.P. 23(c)(2) requires the court to direct to Class Members "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

> The notice shall advise each member that: (A) The court will exclude him from the class if she so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

*Id.*

The attached Notice, **Exhibit 2**, advises Class Members in plain language of the settlement. It explains the class definitions, identifies Class Counsel and

describes the substantive settlement terms. The proposed Notice instructs 23(b)(2) Class Members that they have a right to object to the settlement and how to do so. For Damages Class Members, the proposed Notice advises them of the terms of the settlement, the scope of the release, and the option and instructions on how to opt out or object to the settlement.

For the damages class under C.R.C.P. Rule 23(b)(3), the proposed Notice further advises them of the different tiers of damage, the type of injury relevant to each Tier, whether they are in the Damages Class, and if so, the proposed Tier of injury assigned to that Class Member. The Notice will also inform Damages Class Members that the minimum amount of money assigned to each tier is an estimate and that this amount may increase based on the final number of people in each tier, and the determination of the amounts by Ret. Judge Habas for Tier III. The Notice also contains the scope of the release each Damages Class member will be required to sign, and information about how to opt out or object.

The Notice further informs all Class Members how to contact Class Counsel and that Class Counsel will be coordinating with CDOC to arrange visits (in person or remote) with Class Members. Given that there are three damage tiers, that it is unknown how many Class Members will opt out, the precise amount of settlement value per Class Member is unknowable until after entry of the Consent Decree. *See, e.g.*, *Does 1-2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 901 (6th Cir. 2019) (settling parties cannot know "the total number of [class members] who [will] opt[] to participate in

the [settlement]," thus making calculation of precise settlement values impossible at the notice stage).  Courts have not imposed a per se requirement that settlement class notices identify with particularity the exact amount that damage class members will receive especially where, as here, the notice includes a reasonable estimate of the expected recovery. *See, e.g., McAdams v. Robinson*, 26 F.4th 149, 158–59 (4th Cir. 2022) (explaining that notices must only "describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard"); *see also Déjà vu Servs.*, 925 F.3d at 901.

Defendants are in the process of providing additional discovery to Class Counsel to allow them to make the preliminary determinations as to Damages Class Members. Class Counsel has already begun the process of making preliminary tier assignments and expect that it should be completed by late October so that the Notices may be issued.

The Notice will be disseminated in the best method practicable—a Class Administrator will work with CDOC to send the Notice both in English and Spanish[4] to all Class Members identified by Defendants as of September 1, 2023. The Notice and full Consent Decree will also be available in the general library of every facility housing Class Members. *Diaz v. Romer*, 801 F. Supp. 405, 406 (D. Colo. 1992), *aff'd*, 9 F.3d 116 (10th Cir. 1993) (finding class notice satisfied due process when posted in

---

[4] Once approved, Plaintiffs and CDOC Defendants will submit as Exhibit C the Notice in Spanish, translated by a certified Spanish translator.

every prison living unit and each law library); § 8:28, Notice by mail, 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS (6th ed.) ("While parties sending notice may employ a wide variety of methods, notice by mail is the preferred means…."). In short, the proposed Notice contains the very type of information contemplated by C.R.C.P. (23)(c)(2). The content of the Notice as well as the method of dissemination meets Rule 23 and due process requirements.

As to timing, Plaintiffs and CDOC Defendants propose the following schedule:

| | |
|---|---|
| Initial Discovery[5] to Class Counsel: | October 30 |
| Class Counsel Assigns Tier Allocations: | October 30 |
| Notice To Be Sent | November 3 |
| Objections Due (45 Days[6]) | December 18 |
| Opt Outs Due | December 18 |
| Motion for Final Approval of Consent Decree | December 26 |
| Fairness hearing _____ | |

(Class Counsel requests the hearing be scheduled December 26-29)

Class and CDOC counsel will request a schedule for Tier 3 submissions, Mediator decision on Tier 3 damages, and Mediator decision on attorneys' fees in the Motion for Final Approval. At that

---

[5] Class Counsel and CDOC Defendants' counsel have agreed to a priority list of record production. Counsel recognize there may be additional records requested and will advise the Court if there are delays in this process necessitating amending these deadlines.

[6] Courts routinely hold 45 days is sufficient time for objections and opt-outs to a settlement. *See generally* 2 Newberg § 8.37; *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 240-241 (D.N.J. 1997) (concluding that class notice gave class members sufficient time to opt out of policyholders' class action against life insurer, where members had 45 days from date of mailing of class notice to decide to opt out).

time, Class Counsel will know the number of Damages Class Members in Tier 3, allowing Class and CDOC Counsel and the Mediator to estimate the time needed to make those determinations.

## CONCLUSION

The proposed Consent Decree is a product of arm's-length, serious, informed, and non-collusive negotiations between Class Counsel and the Department of Law, presided over by an independent retired judge, and amounts to a fair and reasonable resolution of Plaintiffs' claims. Plaintiffs and CDOC Defendants thus jointly and respectfully request the Court preliminarily approve the Consent Decree, authorize sending the notice to putative Class Members, preliminarily certify the injunctive and damages classes, and set a date for a final settlement approval fairness hearing where the Court will finally determine certification of the Settlement Class pursuant to C.R.C.P. 23(b)(2) and (3).

Respectfully submitted this 27th day of September, 2023,

PHILIP J. WEISER
Attorney General

s/ Paula Greisen

Paula Greisen
Scott Medlock
GREISEN MEDLOCK, LLC
6100 E. Colfax Avenue, Suite 4-216
Denver, Colorado 80220

Lynly S. Egyes
Shawn Thomas Meerkamper
Dale Melchert
TRANSGENDER LAW CENTER
P.O. Box 70976

s/ Heather K. Kelly

HEATHER K. KELLY, # 36052*
First Assistant Attorney General
REBECCA JOHANNESEN, #55799
Second Assistant Attorney General
JACK D. PATTEN, #36882*
CHRISTOPHER J.L. DIEDRICH, #45213*
Senior Assistant Attorneys General
MARK C. LOCKEFEER, #57470*
Civil Litigation and Employment Law Section
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor

Oakland, CA 94612

Suneeta Hazra
ARNOLD & PORTER KAYE
SCHOLAR LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202

*Attorneys for Plaintiffs*

Denver, CO 80203

*Attorneys for Defendants Department of
Corrections, Dean Williams, Travis Trani,
Randolph Maul, M.D. and Sarah Butler,
M.D.*

*Counsel of Record

<u>**CERTIFICATE OF COMPLIANCE WITH C.R.C.P. 121, § 1-15(1)**</u>

Pursuant to C.R.C.P. 121, § 1-15(1)(a), the undersigned attorneys advise that this motion consists of greater than 15 pages –- 20 pages exclusive of case caption, signature block, certificate of service, and this certificate of compliance. The undersigned attorneys have filed a separate motion to exceed the page limits.

*s/ Paula Greisen*                                      *s/ Heather K. Kelly*

Paula Greisen                                          HEATHER K. KELLY, #36052*
*Counsel for Plaintiffs*                               *Counsel for CDOC Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed and served via the Colorado Courts E-Filing System on this 26th day of September, 2023, to the following:

Paula Greisen, #19784                         Suneeta Hazra
Scott Medlock, #57210                         ARNOLD & PORTER KAYE
GREISEN MEDLOCK, LLC                          SCHOLAR LLP
6100 E. Colfax Avenue, Suite 4-216           1144 Fifteenth Street, Suite 3100
Denver, Colorado 80220                        Denver, Colorado 80202
Phone: (303) 876-7663                         suneeta.hazra@arnoldporter.com
pg@greisenmedlock.com                         *Attorneys for Plaintiffs*
sm@greisenmedlock.com
*Attorneys for Plaintiffs*                    LeeAnn Morrill
                                              Grant Sullivan
Lynly S. Egyes                                Colorado Department of Law
Shawn Thomas Meerkamper                       1300 Broadway, 6th Floor
TRANSGENDER LAW CENTER                        Denver, CO 80203
P.O. Box 70976                                leann.morrill@coag.gov
Oakland, California 94612                     grant.sullivan@coag.gov
lynly@transgenderlawcenter.org               *Attorneys for Governor Polis*
shawn@transgenderlawcenter.org
*Attorneys for Plaintiffs*                    /s/  *Sarah Bomgardner*
                                              On behalf of the Colorado Department
                                              of Law