## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**RHONDA FLEMING,**

**Plaintiff,**

**v.**

**ERICA STRONG,**
**WARDEN OF FCI-TALLAHASSEE,**

**Defendant.**

**Civil Case Number:**
**4:21-CV-325-MW-MJF**

## DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION OR, IN THE ALTERNATIVE, MOTION IN LIMINE

Pursuant to Rules 12(b)(1) and (h), Federal Rules of Civil Procedure, Defendant Erica Strong, in her official capacity as Warden of FCI-Tallahassee, ("Defendant") files this Motion with respect to Plaintiff Rhonda Fleming's ("Plaintiff")'s only remaining claim in this above-captioned lawsuit.

## INTRODUCTION

Defendant has never disputed in this litigation that, under Eleventh Circuit precedent, an inmate may bring a lawsuit seeking prospective injunctive relief arising from alleged violations of that inmate's constitutional right to bodily privacy. *See generally Fortner v. Thomas*, 983 F.2d 1024 (11th Cir. 1993). The Court's summary-judgment order is premised on the continued existence of such a claim—

specifically, for example, that "factual disputes remain with respect to whether the bathroom stalls and shower curtains at FCI Tallahassee afforded Plaintiff sufficient privacy" to accommodate her constitutional rights. [ECF No. 143, p. 2].

Now, however, during the meet-and-confer process leading up to trial and in preparing pretrial paperwork, Plaintiff, through her counsel, represented for the first time that the *only* relief she seeks on her *only* remaining claim has little to do with the privacy rights of Ms. Fleming herself, or the conditions of her past, current, or future prison facilities. Instead, Plaintiff seeks to use what once purported to be a bodily-privacy claim as a Trojan Horse, through which she seeks nationwide relief against a nationwide policy about discretionary housing-placement determinations in the Bureau of Prisons ("BOP"). Specifically, Plaintiff now purports to seek relief (and only relief) that would (1) rescind the portions of the BOP's Transgender Offender Manual that relate to prisoner housing-placement determinations (what Plaintiff calls the "Transgender Housing Policy"), and (2) replace it with a new, court-ordered housing policy that would categorically prohibit cisgender female inmates from being housed with transgender female inmates (*i.e.*, natal males), anywhere in the United States, over the recommendation of the BOP's Transgender Executive Council.

This Plaintiff cannot do, for at least two reasons. First, the United States has not waived sovereign immunity with respect to challenges to BOP's housing-

placement determinations. *See* 18 U.S.C. § 3625. Typically, the general waiver of sovereign immunity in the Administrative Procedure Act ("APA") allows for lawsuits against federal agencies for allegedly unlawful (or unconstitutional) agency actions, if the plaintiff is seeking a remedy "other than money damages." 5 U.S.C. § 702. But Congress separately provided that the APA's waiver "do[es] not apply to the making of any determination" by the BOP about prisoner housing placement. 18 U.S.C. § 3625. Defendant is aware of no other waiver of sovereign immunity that might conceivably apply here, and Plaintiff has identified none.

Second, even if there were some as-yet-unidentified waiver of sovereign immunity that covered Plaintiff's claim, Congress also affirmatively precluded judicial review over BOP's prisoner housing-placement decisions, in a separate provision: "Notwithstanding any other provision of law, a designation of a place of imprisonment [by the BOP] is not reviewable by any court." 18 U.S.C. § 3621(b). That statutory text is broad and unambiguous; it easily covers the "designation of a place of imprisonment" for both Ms. Fleming, and the co-inmates with whom Ms. Fleming does not want to be housed.

For either or both of those reasons, this Court lacks subject-matter jurisdiction over the only remaining claim Plaintiff purports to pursue: a claim seeking to categorically prohibit the co-housing of cisgender and transgender female inmates, without regard to the individualized needs of those prisoners or the prison itself.

Regardless, at a minimum and in the alternative, if the Court concludes that any other (properly exhausted) claim remains in this case, the Court should at least (1) dismiss any challenge to the Transgender Housing Policy (over which the Court lacks subject-matter jurisdiction), and (2) preclude any evidence or inquiry at trial regarding the reasonableness of that policy. Instead, at most, any trial in this matter should be limited to an inquiry about the privacy protections that are available to Ms. Fleming in her current facility (such as in the bathrooms and showers), and whether those privacy protections are sufficient to satisfy minimal constitutional requirements with respect to bodily privacy for inmates.

Finally, sovereign immunity is a form of "immunity from suit rather than a mere defense to liability," which means that "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985). For that reason, Defendant respectfully requests a ruling on this motion in advance of trial (and in advance of the upcoming deadlines for pre-trial submissions). If necessary, the Court may wish to consider a brief continuance of those deadlines and of the trial date pending consideration of this motion.

## **ARGUMENT**

I.   **THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFF'S ONLY REMAINING CLAIM.**

A.   **The United States has not waived its sovereign immunity from claims challenging housing-placement decisions of the Bureau of Prisons.**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature." *Id.*; *accord Black v. Wigington*, 811 F.3d 1259, 1270 (11th Cir. 2016) ("Sovereign immunity is a question of jurisdiction."). In other words, "the 'terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *Meyer*, 510 U.S. at 475 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)) (alterations omitted); *see also, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

"[T]he plaintiff bears the burden of establishing subject matter jurisdiction, and, thus, must prove an explicit waiver of immunity" to maintain suit against the United States. *Ishler v. IRS*, 237 F. App'x 394, 398 (11th Cir. 2007) (citation omitted); *see also, e.g.*, *Miccosukee Tribe of Indians of Fla. v. Jewel*, 996 F. Supp. 2d. 1268, 1273 (S.D. Fla. 2013) (the plaintiff "bears the burden of showing subject-matter jurisdiction through an explicit waiver of immunity").

"Waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed,'" and "are not generally to be 'liberally construed.'" *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33-34 (1992) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)). Instead, Congress "must make its intent to abrogate sovereign immunity 'unmistakably clear in the language of the statute.'" *Financial Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 346 (2023) (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)). That is "because the power to waive the federal government's immunity is Congress's prerogative, not" that of the courts. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48-49 (2024).

So, for example, "the general federal question and mandamus jurisdiction statutes" do not suffice to establish a waiver of sovereign immunity. *Miccosukee Tribe*, 996 F. Supp. 2d at 1274. And "[a]s a general rule," even otherwise "explicit waivers of sovereign immunity are narrowly construed in favor of the sovereign and are not enlarged beyond what the language requires." *GDG Acquisitions LLC v. Gov't of Belize*, 849 F.3d 1299, 1306 (11th Cir. 2017) (quoting *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1338 (11th Cir. 2015)). These principles of sovereign immunity also apply to constitutional claims. *See, e.g.*, *Shivers v. United States*, 1 F.4th 924, 930 (11th Cir. 2021).

Although it is Plaintiff's burden to identify an explicit waiver of sovereign immunity, she has not even attempted to do so with respect to her only remaining claim.  That may be because, in lawsuits against federal agencies for allegedly unlawful agency action, this step is often trivial: the APA broadly waives sovereign immunity for most claims (including constitutional claims) against federal agencies "seeking relief other than money damages," and also provides that "final agency action[s] for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 702, 704.  Indeed, some of Plaintiff's prior claims (long since dismissed) were likely covered by that waiver.

But with respect to Plaintiff's only remaining claim for relief—that is for, a categorical, court-ordered ban on any co-housing of transgendered and cisgendered inmates—the APA is no help: that waiver of sovereign immunity does not apply to lawsuits filed by federal prisoners relating to BOP's housing-placement determinations.  Instead, Congress provided separately and explicitly—in a section of the U.S. Code titled "Inapplicability of the Administrative Procedure Act"—that "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."  18 U.S.C. § 3625.

"[T]his subchapter" includes 18 U.S.C. § 3621, which provides that (among other things) it is for "[t]he Bureau of Prisons" to "designate the place of the

prisoner's imprisonment," after considering the factors specified by Congress, including:

- bed availability,
- the prisoner's security designation,
- the prisoner's programmatic needs,
- the prisoner's mental and medical health needs,
- any request made by the prisoner related to faith-based needs,
- recommendations of the sentencing court, and
- other security concerns of the Bureau of Prisons

18 U.S.C. 3621(b).  After considering these factors, "[t]he Bureau may designate *any* available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau," which "the Bureau determines to be appropriate and suitable."  *Id.* (emphasis added).

That is the only relevant authority that BOP has exercised here—both with respect to Plaintiff's housing determinations, and that of the transgender inmates with whom Plaintiff does not want to be co-housed.  *See* BOP, Transgender Offender Manual, Program Statement No. 5200.08 (Jan. 13, 2022), https://perma.cc/F6Q9-HAYK ("The reviews will consider on a case-by-case basis that the inmate placement does not jeopardize the inmate's wellbeing and does not present management or security concerns."); *see also id.* ("The agency shall not place transgender or intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status" except in limited circumstances, such as "for the purpose of protecting such inmates."); *id.* ("[T]he agency shall consider on a

case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.").

The Eleventh Circuit has endorsed this straightforward reading of 18 U.S.C. § 3625, as barring claims that challenge housing determinations by BOP. As the Eleventh Circuit stated just last year, "§ 3625 expressly exempts the BOP's prisoner-placement and prerelease-custody decisions . . . from judicial review under the Administrative Procedures Act (APA)." *Sills v. FCI Talladega Warden*, No. 22-12656, 2023 WL 1775725, at *4 n.3 (11th Cir. Feb. 6, 2023). The result is that these discretionary BOP decisions about housing placement are simply "not subject to judicial review." *Cook v. Wiley*, 208 F.3d 1314, 1319 (11th Cir. 2000) (citing 18 U.S.C. § 3625).

That Congress chose to maintain the sovereign immunity of the United States in this context should come as no surprise. After all, "[d]eciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons." *Cohen v. United States*, 151 F.3d 1338, 1344 (11th Cir. 1998); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). That is why, "[a]s part of its expansive authority to manage federal prisons, the BOP" alone has been delegated "the power to 'designate the place of the

9

prisoner's imprisonment' and to transfer 'a prisoner from one penal or correctional facility to another.'" *Sills*, 2023 WL 1775725, at *2 (quoting 18 U.S.C. § 3621(b)).

For these reasons, the APA does not waive the sovereign immunity of the United States over Plaintiff's challenge to BOP's housing-placement decisions, made under the authority the covered "subchapter" of Title 18.   That is, Plaintiff challenges decisions by "[t]he Bureau of Prisons" to "designate the place of the prisoner's imprisonment"—both her "place of . . . imprisonment," and that of her fellow inmates.   18 U.S.C. § 3621(b).   And other than the APA, Defendant is not aware of any other potentially relevant waiver of sovereign immunity, nor has Plaintiff identified one.   Accordingly, Plaintiff's only remaining claim should be dismissed.

## B. Congress has also affirmatively precluded judicial review over claims challenging housing-placement decisions of the Bureau of Prisons.

Even if the APA applied here, or even if there were some otherwise applicable waiver of sovereign immunity, the Court would still lack subject-matter jurisdiction over the only claim (and the only associated relief) that Plaintiff now pursues.   That is because, with respect to housing determinations made under 18 U.S.C. § 3621(b), Congress also took affirmative action (in the First Step Act of 2018) to expressly *preclude* any judicial review: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by

any court."  18 U.S.C. § 3621(b).  That straightforward jurisdiction-stripping provision is also applicable here, and independently fatal to this claim.

As a general matter, Congress's "control over the jurisdiction of the federal courts is plenary." *Patchak v. Zinke*, 138 S. Ct. 897, 906 (2018) (citation omitted). Because Congress alone "possess[es] the sole power of creating the tribunals (inferior to the Supreme Court)," it also has the exclusive power "of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good." *Palmore v. United States*, 411 U.S. 389, 400-01 (1973) (quoting *Cary v. Curtis*, 44 U.S. 236, 245 (1845)); *accord Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction." (citing U.S. Const. art. III, § 1)).  Ultimately, when Congress limits federal jurisdiction, "it exercises a valid legislative power no less than when it lays taxes, coins money, declares war, or invokes any other power that the Constitution grants it." *Patchak*, 138 S. Ct. at 906. And "what the Congress gives, the Congress may take away." *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017).[1]

This jurisdiction-stripping provision, although enacted relatively recently, has been repeatedly enforced as written within the Eleventh Circuit. *See, e.g.*, *Touizer*

---

[1] The APA—were it applicable here—also accounts explicitly for the possibility that another statute might "preclude judicial review." 5 U.S.C. 701(a)(1). 18 U.S.C. § 3621(b) is exactly that sort of statute.

*v. U.S. Att'y Gen.*, No. 21-10761, 2021 WL 3829618, at *2 (11th Cir. Aug. 27, 2021) ("[T]he BOP alone 'shall designate the place of the prisoner's imprisonment,' and such 'a designation of a place of imprisonment . . . is not reviewable by any court.' 18 U.S.C. § 3621(b)."); *Beckford v. Warden, FCI Jessup*, No. 2:22-cv-27, 2023 WL 2414871, at *4-5 (S.D. Ga. Feb. 15, 2023) (18 U.S.C. §§ 3621(b) and 3625 "entirely preclude[] this Court's review of the BOP's challenged determination of Beckford's . . . alleged non-placement in a camp or on home confinement"), *report and recommendation adopted*, 2023 WL 2403879 (S.D. Ga. Mar. 8, 2023).

This Court should likewise give effect to this explicit congressional command: in short, a "'designation of a place of imprisonment under [§ 3621(b)] is not reviewable by any court.'" *Sills*, 2023 WL 1775725, at *2 (quoting 18 U.S.C. § 3621(b)).

The fact that Plaintiff brings a constitutional claim does not change this result. Defendant acknowledges that, to avoid constitutional questions, the Supreme Court has at times suggested that "Congress must make its intent to preclude constitutional claims clear." *Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1075 n.8 (11th Cir. 2002) (citing *Webster v. Doe*, 486 U.S. 592, 603 (1988)). "[B]ut here, Congress has used plain language to do that," so any applicable "canon of constitutional avoidance is inapplicable." *Id.* Indeed, the Eleventh Circuit has squarely held that "[t]he use of the word 'any'" in a jurisdiction-stripping statute

"compels us to conclude that Congress meant to bar jurisdiction over constitutional as well as statutory claims." *Id.* 18 U.S.C. § 3621(b) uses similar language, which (if anything) is clearer and broader than the statute that was at issue in *Broward Gardens*, in which the Eleventh Circuit rejected the argument that a preclusion-of-review provision "does not bar constitutional challenges." 311 F.3d at 1074.[2]

Of course, as a general matter, significant limitations on judicial review (including of constitutional claims) are routine in the context of litigation brought by federal prisoners. *See, e.g.*, *Miller v. French*, 530 U.S. 327, 347 (2000); 28 U.S.C. § 1915(g). And here, the Eleventh Circuit itself has already applied this (relatively new) preclusion provision against constitutional claims—without expressing any concerns about the clarity of congressional intent.

In *Touizer*, a federal prisoner brought First Amendment, Fifth Amendment, and Eighth Amendment challenges to the location of his imprisonment. *See* 2021 WL 3829618 at *1. The district court held "that the BOP was vested with the

---

[2] Even if there were a *Webster v. Doe* problem here (that is, with respect to the clarity of the jurisdiction-stripping provision in 18 U.S.C. § 3621(a)), that would still be no help to Plaintiff in identifying an explicit waiver of sovereign immunity, given the separate language in 18 U.S.C. § 3625. In fact, in the sovereign-immunity context, the relevant statutory-interpretation principles cut in the opposite direction: "a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); *see also Kirtz*, 601 U.S. at 49 ("[A]ny ambiguities in the statutory language are to be construed in favor of immunity."). So whatever it means for the preclusion of review, the constitutional nature of Plaintiff's claim is no help in identifying a waiver of sovereign immunity.

exclusive power to determine a prisoner's place of confinement," and so the court "lacked the authority to order the BOP to select a certain location for Touizer's confinement." *Id.* at *1. The Eleventh Circuit affirmed, explaining that "the BOP alone 'shall designate the place of the prisoner's imprisonment,' and such 'a designation of a place of imprisonment . . . is not reviewable by any court.'" *Id.* (quoting 18 U.S.C. § 3621(b)). The same is true here—both with respect to the designation of Plaintiff's place of imprisonment, and those of her fellow inmates.

### C. Plaintiff seeks relief against (and only against) housing-placement determinations by the Bureau of Prisons.

As established above, housing-placement determinations by BOP are not subject to judicial review—both because the United States maintains its sovereign immunity, *see* 18 U.S.C. § 3625, and because Congress affirmatively precluded judicial review, *see* 18 U.S.C. § 3621(b). So the key question here is whether, in fact, Plaintiff challenges BOP's housing-placement determinations in this case.

According to Plaintiff's counsel, she does. Plaintiff's most recent filing in this case described her only remaining claim as "litigation with the Bureau of Prisons regarding their transgender housing policy." Pl.'s Mot. for a Writ of Habeas Corpus at 1, ECF No. 147. Of course, the "transgender housing policy" referenced by Plaintiff's counsel is (as the name suggests) a *housing* policy. In particular, it is a policy that guides BOP's consideration and application of the factors set forth in 18 U.S.C. § 3621(b) to transgender inmates, and those (like Plaintiff) who may be

housed with transgender inmates—factors like "the prisoner's mental and medical health needs," and "other security concerns of the Bureau of Prisons." *See* BOP, Transgender Offender Manual, Program Statement No. 5200.08 (Jan. 13, 2022), https://perma.cc/F6Q9-HAYK ("The reviews will consider on a case-by-case basis that the inmate placement does not jeopardize the inmate's wellbeing and does not present management or security concerns. . . . The agency shall not place transgender or intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status" except in limited circumstances, such as "for the purpose of protecting such inmates"); *see also id.* ("[T]he agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.").

For that reason, in a recent pre-trial meeting concerning the preparation of pretrial paperwork, counsel for the United States sought clarification regarding the nature of Plaintiff's claim, and the relief she was seeking at trial. Plaintiff's counsel responded unequivocally: Plaintiff seeks relief (and only relief) that would (1) rescind the portions of the BOP's Transgender Offender Manual that relate to prisoner housing-placement determinations, and (2) replace it with a new, court-ordered housing policy that would *categorically* prohibit cisgender female inmates from being housed with transgender female inmates (instead of considering those placement determinations on a case-by-case basis, as under the current policy).

15

Accordingly, based on clear representations from her own counsel, Plaintiff's only remaining claim purports to seek judicial review of BOP's housing-placement determinations—all of which are made under the authority delegated by 18 U.S.C. § 3621(b)—over which Congress has expressly precluded judicial review, and over which the United States is immune. That claim, then, should be dismissed.

To be clear, if Plaintiff had instead maintained her challenge to the constitutional adequacy of the privacy protections in her prison's bathroom and shower facilities—as some of her previous filings in this case suggested she might—Defendant would not be advancing these jurisdictional arguments relating to BOP's discretion to make housing-placement determinations. For example, the integrity of "the bathroom stalls and shower curtains at FCI Tallahassee," Summary Judgment Order at 2, ECF No. 147, could be addressed by an order of this Court after considering the factual evidence on that subject—without any conflict with congressional intent to preclude review over housing-placement determinations. But Plaintiff has now expressly disavowed that interpretation of her claim during the meet-and-confer process, instead emphasizing repeatedly that the *only* relief she was seeking relates to the BOP's housing-placement decisions.

In any event, to the extent Plaintiff *had* brought any claim relating to her bathroom and shower facilities at her current location, she has not properly exhausted it. The Prison Litigation Reform Act's ("PLRA") exhaustion requirement

requires that any administrative "grievance" "raise the *specific* issue addressed in the complaint." *Hernandez v. GEO Grp.*, No. 23-13653, 2024 WL 3963947, at *3–4 (11th Cir. Aug. 28, 2024) (emphasis added).  But here, neither the complaint, nor any administrative filing, raises any concerns with the bathroom or shower privacy protections at Plaintiff's current facility.  (As the Court noted in its summary-judgment order, the parties' summary-judgment briefing addressed these issues at FCI Tallahassee, but Plaintiff was reassigned to another facility nearly two years ago, and has recently been transferred.)  This is no mere technicality—had Plaintiff raised a proper administrative objection, Defendant might have been able to remedy those problems through the administrative process, thus avoiding unnecessary federal-court litigation.  *See, e.g.*, *Johnson v. Meadows*, 418 F.3d 1152, 1155-56 (11th Cir. 2005) ("[I]nmates must exhaust administrative remedies so long as there is the possibility of at least some kind of relief.").  And they still might—if Plaintiff has any lingering concerns about her constitutional privacy protections at her current facility, she can and should submit an administrative grievance, and Defendant will consider it in good faith.[3]

---

[3] Although the Court need not decide this exhaustion issue now—given counsel's clear representations about the nature of her only remaining claim—should Plaintiff try to restyle her only remaining claim (again) as a challenge relating to the bathroom and shower setup at her current facility, Defendant respectfully request the opportunity to submit further briefing on the issue of exhaustion, to demonstrate that Plaintiff could have (but thus far has not) pursued administrative remedies (*e.g.*,

**D.    The proper remedy is dismissal, before trial, for lack of subject-matter jurisdiction.**

Defendant acknowledges that at least some of the arguments above may have been raised earlier in the litigation, and regret any inefficiency caused by raising them now—though it was not clear until the parties' recent meet-and-confer that Plaintiff's only theory of the case so squarely implicated 18 U.S.C. §§ 3625 and 3621(b).    Regardless, the timing offers no legal basis to deny relief, because arguments about the absence of subject-matter jurisdiction can never be forfeited or waived.    *See, e.g.*, *United States v. Campbell*, 26 F.4th 860, 872 n.2 (11th Cir. 2022) (en banc).    Accordingly, because it is now clear that Plaintiff's only remaining claim (and only associated relief sought) is beyond the subject-matter jurisdiction of this Court, this case should now be dismissed.

Defendant respectfully requests that the Court issue a ruling on this motion in advance of trial, rather than defer its resolution until after trial.    Even setting aside the significant efficiency benefits of that approach, sovereign immunity is a form of "immunity from suit rather than a mere defense to liability," which means that "it is effectively lost if a case is erroneously permitted to go to trial."    *Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985); *accord Griesel v. Hamlin*, 963 F.2d 338, 340 (11th Cir. 1992) (allowing interlocutory appeal because "sovereign immunity under Georgia

---

relating to the length of the shower curtains at her current facility, the availability of separate bathroom stalls, etc.).

law is an immunity from suit," not just "a defense to substantive liability"). It would not serve that interest to allow the government to go to trial (or to expend significant resources in preparation for trial) on a claim over which the United States is immune. Accordingly, if necessary, the Court may wish to consider a brief continuance of all pre-trial deadlines and of the trial date pending consideration of this motion.

## II.    IN THE ALTERNATIVE, AT A MINIMUM, THE COURT SHOULD DISMISS ANY CHALLENGE TO THE REASONABLENESS OF THE BOP'S HOUSING POLICY, AND PRECLUDE ANY EVIDENCE OR INQUIRY AT TRIAL REGARDING THAT POLICY.

In the alternative, should the Court hold that (1) Plaintiff has a live, non-precluded claim relating to her current bathroom and shower facilities, *but see supra* at 5-16, and (2) she has properly exhausted that claim, *but see supra* at 16-17, the Court should still grant this motion in part. In particular, the Court should still dismiss any challenge to the reasonableness of the BOP's transgender housing policy, and preclude any evidence or inquiry at trial regarding that policy. For all the reasons above, that sort of inquiry would go beyond the subject-matter jurisdiction of the federal courts, and is thus an inappropriate subject for trial. *See supra* at 5-16.

This limitation would also ensure that any relief ordered in this case complies with the PLRA, which provides that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). In other words, even setting aside the more general reasons why

"nationwide injunctions frustrate foundational principles of the federal court system," *Georgia v. President of the United States*, 46 F.4th 1283, 1305 (11th Cir. 2022), the PLRA already reflects Congress's explicit preference for narrowly drawn, party-specific relief in this sort of litigation. *See, e.g.*, *Benning v. Comm'r, Georgia Dep't of Corr.*, 71 F.4th 1324, 1340 (11th Cir. 2023) (rejecting inmate's requested relief as "overbroad and inappropriate" under the PLRA), *cert. denied*, 144 S. Ct. 1457 (2024).

Finally, as a practical matter, an inquiry into the reasonableness of nationwide BOP policies regarding the housing of transgender inmates is also entirely unnecessary for Plaintiff to vindicate her constitutional rights to bodily privacy. If Plaintiff established any violation of that constitutional right, it could be remedied, for example, with an order requiring sufficient privacy in bathrooms, showers, or other shared spaces in Plaintiff's current or future BOP housing facilities. Indeed, BOP already strives to achieve such privacy, in all its facilities, to the greatest extent possible, while accounting for the security needs of prison life.

## CONCLUSION

For these reasons, this case should be dismissed, in its entirety, for lack of subject-matter jurisdiction. In the alternative, at a minimum, the Court should dismiss any challenge to the reasonableness of the BOP's transgender housing policy, and preclude any evidence or inquiry at trial regarding that policy.

Respectfully submitted,

JASON R. COODY
United States Attorney

*/s/ Marie A. Moyle*
**MARIE A. MOYLE, ESQ.**
Assistant United States Attorney
Florida Bar No. 1003498
Email: marie.moyle@usdoj.gov

111 N. Adams Street, 4th Floor
Tallahassee, FL  32301
Telephone:  85-942-8430
Fax:  850-942-8466
Counsel for Defendant

## LOCAL RULE 7.1(F) CERTIFICATE

I HEREBY CERTIFY that this memorandum contains 4,747 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).