**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

| | |
|---|---|
| **RHONDA FLEMING,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ERICA STRONG,**<br>**WARDEN OF FCI-TALLAHASSEE,**<br><br>**Defendant.** | **Civil Case Number:**<br>**4:21-CV-325-MW-MJF** |

**DEFENDANT'S TRIAL BRIEF**

Defendant Erica Strong, in her official capacity as Warden of FCI-Tallahassee ("Defendant"), in accordance the Court's Pretrial Order at ECF No. 144, submits the following trial brief outlining the factual background and legal framework of this case for the Court's consideration.

## I. Introduction and Procedural Posture

Plaintiff Rhonda Fleming ("Ms. Fleming" or "Plaintiff") initially brought this lawsuit alleging a variety of claims against the Bureau of Prisons ("BOP"). Now, after extensive briefing and rulings from the Court, the only claim that remains is whether Plaintiff's constitutional right to bodily privacy was violated while housed at FCI Tallahassee at the same time as two transgender females (natal males). Specifically, Plaintiff claims her constitutional right to bodily privacy was violated

when she was forced to expose herself to these individuals while showering and/or using the toilet in A-Unit. As articulated in the Court's summary judgment order, "factual disputes remain with respect to whether the bathroom stalls and shower curtains at FCI Tallahassee afforded Plaintiff sufficient privacy" to accommodate her constitutional rights. [ECF No. 143, p. 2].

This case is specially set for a two-day, non-jury trial on January 14 and January 15, 2025. The only relief Plaintiff can obtain if she prevails is declaratory and/or injunctive relief. Defendant argues that procedurally, Plaintiff lacks standing to maintain her claim about a violation of her constitutional right to bodily privacy, as the evidence will demonstrate that she cannot identify an injury in fact. Substantively, any infringement of Plaintiff's privacy rights was reasonably related to a legitimate penological interest under the four-factor analysis in *Turner v. Safley*, 482 U.S. 78 (1987).

## II. Factual Overview: Plaintiff's Incarceration at FCI Tallahassee

Plaintiff was housed at FCI Tallahassee from October 30, 2018, to January of 2022. Her current scheduled release date is June 13, 2033. Plaintiff was convicted of one count of conspiring to commit health care fraud and wire fraud, 35 counts of aiding and abetting health care fraud, 10 counts of aiding and abetting wire fraud, 16 counts of money laundering, and five counts of engaging in monetary transactions in property derived from specified unlawful activity.

The allegations in Plaintiff's case concern her housing in A Unit (North) while at FCI Tallahassee. Plaintiff's Amended Complaint states that she "has been forced to share intimate spaces with male inmates, in open dorms, 24 hours a day," and that she has been compelled to "expose herself several times a day, when showering or using the toilet." [ECF No. 10, p. 7]. The shower area in A North is subdivided into individual shower stalls, with barriers between the stalls. Similarly, there are opaque curtains shielding the toilet areas.

While incarcerated at FCI Tallahassee, the only two transgender females (natal males) that Plaintiff interacted with, to her knowledge, were ET and CJ. Plaintiff never shared a cubicle with either ET or CJ. CJ was housed in A South, while ET was housed approximately four cubicles away from Plaintiff in A North. ET, a natal male at birth, had multiple gender affirming surgeries before reporting to prison as a transgender female.

Despite her allegations, Plaintiff has not identified any instance where she was forced to expose herself to a natal male. She testified that she always used the shower curtain when showering. Further, she stated she never changed her clothing in her cubicle; rather she pulled the shower curtain closed every time and changed her clothes behind the shower curtain. According to the FCI Tallahassee Admission & Orientation Handbook, all adults in custody ("AICs") are "required to be dressed at all times . . . in all areas of the housing unit." [ECF No. 133-4, p. 11].

In the 2010s, the BOP began to receive multiple requests from wardens and staff seeking guidance in dealing with the unique issues that arose with the transgender individuals in their facilities. To respond to the increased number of individuals identifying as transgender, and to promote consistency and uniformity in policy directions to field staff, the BOP formally created, adopted, and implemented the Department's Transgender Offender Manual, Program Statement, 5200.08. The BOP's formation, adoption, and implementation of Transgender Offender Manual involved numerous stakeholders from all program areas of the Bureau of Prisons, as well as outside interest groups and experts. The Transgender Offender Manual serves to maintain the safety and security of BOP facilities, be consistent with federal law, and protect those individuals who identify as transgender, as well as AICs who identify as cisgender.

The Transgender Offender Manual allows BOP to make housing decisions on a case-by-case basis, considering both the needs of transgender inmates and cisgender inmates, as well as more general security and safety concerns. *See* ECF No. 163-1, Ex. 1, BOP Transgender Offender Manual, Program Statement No. 5200.08 (Jan. 13, 2022) https://perma.cc/F6Q9-HAYK ("The reviews will consider on a case-by-case basis that the inmate placement does not jeopardize the inmate's wellbeing and does not present management or security concerns."); *see also id.* ("The agency shall not place transgender or intersex inmates in dedicated

facilities, units, or wings solely on the basis of such identification or status" except in limited circumstances, such as "for the purpose of protecting such inmates."); *id.* ("[T]he agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.").

## III. Controlling Law

### a. Plaintiff Lacks Standing Because She Never Suffered an Injury

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must show: (1) an "injury in fact," that is, a violation of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the defendant's conduct; and (3) that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citation omitted). "In plainer language, the plaintiff needs to show that the defendant harmed [her], and that a court decision can either eliminate the harm or compensate for it." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020). "[S]tanding is not dispensed in gross," but rather "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe*

*Estates, Inc.*, 581 U.S. 433, 439 (2017). Each element of standing is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan,* 504 U.S. at 561.

Plaintiff's bodily privacy claim is premised on the allegation that BOP's policies "provide no privacy for toileting, showering or dressing." [ECF No. 88, p. 20, *adopted at* ECF No. 91]. The testimony at trial, including from Plaintiff herself will demonstrate that is not true—there is no "compelled nudity to the opposite sex" when showering or using the toilet, despite Plaintiff's allegations. To the contrary, Plaintiff's own testimony is that she has never been forced to change in front of anyone, regardless of their sex or gender. Even more so, there are ample privacy protections in place at FCI Tallahassee. Because the uncontroverted evidence establishes that the premise of Plaintiff's claim of being forced unnecessarily to expose her nude body while showering, toileting, and dressing is simply false, Plaintiff has suffered no plausible constitutional injury.

**b. If Established, Any Infringement on Plaintiff's Privacy Rights Was Reasonable Under *Turner v. Safley*, 482 U.S. 78 (1987)**

Assuming Plaintiff can establish an injury sufficient to confer standing, her claim still fails. Although AICs do not lose their constitutional right to privacy upon entering the custody of the federal government, when a prison regulation or policy

"impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The Eleventh Circuit articulated four factors to consider in weighing the reasonableness of such regulations: (a) whether there is a valid, rational connection between the regulation and a legitimate government interest put forward to justify it; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to the AICs; (c) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, AICs and the allocation of prison resources generally; and (d) whether the regulation represents an exaggerated response to prison concerns. *Harris v. Thigpen*, 941 F.2d, 1495, 1516 (11th Cir. 1991) (quoting *Turner*, 482 U.S. at 89–91) (internal quotations omitted). Each factor is addressed briefly in turn.

*First*, the BOP's Transgender Offender Manual is key in providing suitable and safe living quarters for its transgender population, while leaving prison officials with sufficient discretion to make individualized, case-by-case determinations with respect to prisoner housing. The connection between the legitimate penological interest is explained at length in the declaration of Alix McLearen, Ph.D., filed as a Joint Exhibit for trial. She explains that the Transgender Offender Manual, was created to address the needs of the growing population of AICs identifying as transgender "that was consistent with law, and the evolving psychological and legal

landscape, to ensure consistent, appropriate and humane management of treatment of [those] individuals." [ECF No. 163-1, Ex. 3, at ¶ 5]. The BOP distilled its policy into writing in order to "guide and direct staff in a manner consistent with the law and [to] ensure transgender inmates are housed safely and appropriately." *Id.* In doing so, the BOP considered a wide range of security and social issues in developing the policy "through the lens of safety for everyone—staff, inmates who identify as transgender, and those who do not." *Id.* ¶ 9. As such, the BOP undoubtedly has a valid and rational connection between its Transgender Offender Manual and providing suitable and safe living quarters for both its transgender population and cisgender population.

*Second*, in terms of considering Plaintiff's constitutional right to bodily privacy and whether alternative means of expressing that right exist, the uncontroverted evidence will demonstrate that FCI Tallahassee provides for extensive privacy features for all AICs, despite the inherent communal nature of the prison environment. Specifically, the showers at FCI Tallahassee contain privacy partitions and curtains, both of which are opaque. Bathroom stalls also have privacy partitions. AICs are required to remain clothed, in institution uniform or recreation clothing, at all times—nudity is prohibited. In fact, AICs may be subject to disciplinary action for dressing or undressing in cubicles or being nude in a living area. And Plaintiff chose to take advantage of the extensive privacy features that

FCI Tallahassee offered her, rather than expose her body. To the extent that Plaintiff or her fellow inmates ever exposed themselves to each other, it was in spite of (not because of) the actions of the BOP and its reasonable policies.

*Third*, the BOP considered the privacy rights of its staff and AICs, along with allocation of prison resources, through its extensive consideration and input from key stakeholders in developing the Transgender Offender Manual. The policy was created to keep staff, AICs who identify as transgender, and those who do not, safe. [ECF No. 163-1, Ex. 3, at ¶¶ 9, 10]. Particularly as it relates to the cisgender female population, the BOP gave substantial consideration to this group because "research indicates a high rate of [preexisting] victimization and trauma in the female population who are incarcerated." *Id.* Stakeholders participated in robust discussions with a variety of experts, including the Administrator of the Women and Special Populations Branch, and representatives from Psychology Services, the Office of General Counsel, Health Services, and Correctional Programs. *Id.* Additionally, the BOP consulted with external experts and reviewed academic literature in considering the effect of the Transgender Housing Policy on all people who live and work in BOP facilities. *Id.* These same representatives and experts, along with different internal divisions in the BOP such as education, medical, psychology, and corrections, were required to review and comment on the Transgender Offender Manual prior to implementation.

*Finally*, the BOP's case-by-case determinations regarding management of its transgender population does not represent an "exaggerated response" to prison concerns about the individuals tasked within its care. Notably, Plaintiff fails to "point to an alternative" that accommodates her constitutional right to bodily privacy at a "de minimis cost to a valid penological interest." *See Turner*, 482 U.S. at 91. Defendant assuredly has a valid penological interest in ensuring the safety all AICs, including its transgender population, as well as complying with PREA. *See* 77 Fed. Reg. at 37,110 (interpreting PREA, "[i]n deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, an agency may not simply assign the inmate to a facility based on genital status.)." Accordingly, even if Plaintiff can establish an injury in fact and that her privacy rights were violated, any such violation was reasonable under *Turner*.

**c. The Court Lacks Subject Matter Jurisdiction As to the BOP's Housing Determinations**

Finally, Plaintiff's pretrial filings once again introduce uncertainty as to whether she seeks a court order concerning her housing with transgender AICs. This is despite explicit representations at the Court's hearing on Defendant's Motion for Summary Judgment [ECF Nos. 158, 159] that she was not seeking any relief relating to any housing-placement determinations by the BOP (including nationwide housing policies, or Ms. Fleming's particular housing assignments). To the extent Plaintiff

seeks to resurrect such a claim now, the government has no choice but to renew its jurisdictional arguments, because (1) there is no waiver of sovereign immunity for lawsuits filed by federal prisoners relating to BOP's housing-placement determinations, and (2) Congress has expressly precluded judicial review. *See generally* ECF No. 152; *see also Touizer v. U.S. Att'y Gen.*, No. 21-10761, 2021 WL 3829618, at *2 (11th Cir. Aug. 27, 2021) ("[T]he BOP alone 'shall designate the place of the prisoner's imprisonment,' and such 'a designation of a place of imprisonment . . . is not reviewable by any court.' 18 U.S.C. § 3621(b).").

To be clear, Defendant still does not dispute Plaintiff's ability to challenge to the constitutional adequacy of the privacy protections in FCI Tallahassee's bathroom and shower facilities, as this Court's summary judgment order references. *See* ECF No. 143, p. 1 ("factual disputes remain with respect to whether the bathroom stalls and shower curtains at FCI Tallahassee afforded Plaintiff sufficient privacy"). But the reasonableness of nationwide BOP policies related to housing Plaintiff or transgender AICs is not at issue in this lawsuit (beyond possible relevance to this Court's *Turner* analysis) and is not the proper subject of any relief at trial.

Respectfully submitted,

JASON R. COODY
United States Attorney

***/s/ Marie A. Moyle***
**MARIE A. MOYLE**
Assistant United States Attorney

Florida Bar No. 1003498
Email: marie.moyle@usdoj.gov
111 North Adams Street, 4th Floor
Tallahassee, FL 32301
Telephone: (850) 942-8430
Fax: (850) 942-8466

Counsel for Defendant