IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**RHONDA FLEMING,**

    *Plaintiff*,

v.                                                                            Case No.: 4:21cv325-MW/MJF

**KERRI PISTRO, WARDEN OF
FCI-TALLAHASSEE,**

    *Defendant.*

_____/

## ORDER FOLLOWING BENCH TRIAL

In this case, Plaintiff sought declaratory and injunctive relief for alleged violations of her constitutional right to bodily privacy stemming from the conditions of the showers and toilets in the federal prisons where she has been housed. At the outset of this litigation, Plaintiff was pro se and brought multiple claims regarding the Bureau of Prisons' Transgender Offender Manual. *See* ECF No. 1 at 13–19. Defendants moved to dismiss all of Plaintiff's claims, ECF No. 51, and all but one were dismissed. ECF No. 91. Plaintiff then obtained counsel. *See* ECF Nos. 104, 105, 106.

Following discovery, Defendant Strong[1] moved for summary judgment on Plaintiff's remaining claim. ECF No. 134. This Court denied the motion because

---

[1] The only claim remaining after Defendants' motion to dismiss was granted in part is an official-capacity claim against Defendant Strong. At trial, Defendant moved to substitute the

"factual disputes remain[ed] with respect to whether the bathroom stalls and shower curtains at FCI Tallahassee afforded Plaintiff sufficient privacy" to protect her constitutional right to bodily privacy. ECF No. 143 at 2. Prior to trial, Defendant moved to dismiss Plaintiff's remaining claim for lack of subject matter jurisdiction based on alleged representations by Plaintiff's counsel that the relief she sought was an injunction prohibiting the BOP from housing transgender female inmates with cisgender female inmates.[2] ECF No. 152 at 2. As Defendant correctly noted, this Court lacks subject matter jurisdiction over any challenges to BOP's housing-placement determinations. *See* 18 U.S.C. §§ 3621(b), 3625. This Court convened a telephonic hearing, after which this Court denied Defendant's motion based on Plaintiff's counsel's representation that Plaintiff was *not* seeking an injunction regarding the BOP's housing-placement determinations. ECF No. 158.

This Court conducted a bench trial in this matter beginning on Tuesday, January 14, 2025 and continuing through Wednesday, January 15, 2025. At the conclusion of the trial, this Court announced its findings of fact and conclusions of

---

current warden of FCI Tallahassee, Warden Pistro, under Fed. R. Civ. P. 25(d). This Court granted the motion without objection. Accordingly, the case style has been amended to reflect the substitution.

[2] This Court notes that throughout the course of this litigation, this Court has not policed the parties' or witnesses' language as it pertains to the subject at issue, nor has this Court imposed any restrictions or given any direction to the parties, counsel, or witnesses on the terminology or pronouns to be used. Thus, the terms "transgender female," "biological male," and "natal male" are used interchangeably throughout the record.

2

law on the record. This Court ruled in favor of Defendant on Plaintiff's remaining claim for violation of her constitutional right to bodily privacy. This Order incorporates those findings of fact and conclusions of law by reference as if fully set forth herein and summarizes those conclusions below.

This is an important case raising an important issue. As this Court noted on the record, the law makes plain that prisoners have constitutional rights, including a right to bodily privacy. But the law also makes plain that the scope of those rights is limited by the realities of prison administration, and that courts must give "great deference to the decisions of prison officials relating to the administration" of their facilities. *See, e.g.*, *Fortner v. Thomas*, 983 F.2d 1024, 1029 (11th Cir. 1993). Thus, *Fortner* and its progeny establish that a prisoner's constitutional right to bodily privacy is invaded only when she is coerced or compelled to expose intimate parts of her nude body by a government policy or practice, written or unwritten, or by the order, direction, or acquiescence of a government official, express or implied. In this case, Plaintiff simply did not carry her burden to prove, by a preponderance of the evidence, that she was coerced or compelled in any such way to expose herself in the shared showers or toilets at BOP facilities in which she has been housed.

On the contrary, this Court found that BOP policy and practice is to prohibit such exposure and to provide Plaintiff and other inmates with numerous means to protect their bodily privacy. In every facility Plaintiff described, she and all other

3

inmates are required to shower, use the toilet, and change their clothes in individual stalls separated by walls and covered by curtains, and they are permitted to choose the times they shower. This Court found that the only compelled exposure Plaintiff may experience occurs during group strip searches, which are conducted only in emergency circumstances, such as when a tool that could be used as a weapon is missing. Plaintiff's claim—made for the first time at trial—that these emergency strip searches violate her constitutional right to bodily privacy was not properly pled, exhausted, or tried by consent. And even if it were properly before this Court, voluminous case law establishes that exposure in such a situation—even to a member of the opposite sex—does not amount to a constitutional violation.

Even if Plaintiff had carried her burden to prove that a BOP policy or practice did in fact result in the involuntary exposure of the intimate parts of her nude body to a transgender female inmate, and such a claim were properly before this Court, the law establishes that such exposure is only a constitutional violation if those policies and practices are unreasonable under *Turner v. Safley*, 482 U.S. 78 (1987). *See Fortner*, 983 F.2d at 1024. *Turner* lays out four factors that courts must weigh to make this determination: first, whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; second, whether alternative means of exercising the asserted right remain open to inmates; third, whether accommodation of the asserted right would have an impact

on prison staff, inmates, and the allocation of prison resources generally; and fourth, whether the regulation represents an "exaggerated response" to prison concerns. After weighing the factors here, this Court concluded that the policies and practices at issue are not unreasonable, and thus, Plaintiff's constitutional right to bodily privacy was not violated.

First, this Court analyzed the Transgender Offender Manual as a whole under *Turner*, as Plaintiff argued it should, and concluded that it is reasonable.

As to the first *Turner* factor, the Manual bears a valid, rational connection to a legitimate penological interest: namely, the need to develop policies regarding transgender inmates in BOP custody that balance the interests of all inmates, the need for security and effective rehabilitation, and the practical realities of prison administration. This connection is evident from the language and directives of the policy, which identify these considerations and direct that they be incorporated into decisions regarding transgender inmates, from the testimony of Dr. McLearan, who described the process of formulating the policy, and from the testimony of Wardens Pistro and Strong, who described their implementation of the policy.

As to the second factor, numerous means remain available for Plaintiff to exercise her constitutional right to bodily privacy. Binding Eleventh Circuit precedent directs that at this step in the *Turner* analysis, courts must be conscious of the measure of judicial deference owed to corrections officials, and the right should

5

be defined sensibly and expansively. *Harris v. Thigpen*, 941 F.2d 1495, 1517 (11th Cir. 1991). Plaintiff can exercise her right to bodily privacy by making use of the individual stalls and curtains that are provided to shield her body from view while changing, showering, using the toilet, and trying on newly issued garments, and by choosing when she uses the showers and toilets.

As to the third factor, alternative means of accommodating Plaintiff's right to bodily privacy would have a significant impact on prison staff, inmates, and the allocation of prison resources. Binding Eleventh Circuit precedent directs that at this step in the *Turner* analysis, this Court must evaluate the impact of alternatives that could be implemented on a prison-wide scale, not individual accommodations. *Rodriguez v. Burnside*, 38 F.4th 1324, 1333 (11th Cir. 2022). Each of the alternatives suggested by Plaintiff—including replacing all privacy curtains in BOP facilities, scheduling showers for all inmates, providing all inmates with the opportunity to request a private shower, or creating separate housing for transgender inmates—would have a significant impact on prison staff, inmates, and the allocation of prison resources.

And as to the fourth factor, the Manual does not represent an exaggerated response to prison concerns. At this step, the existence of "obvious, easy alternatives" to the policy is evidence that the policy is an exaggerated response. But Plaintiff has not presented any "obvious, easy alternatives" to the Manual's policies,

6

nor any other evidence suggesting that it is an exaggerated response to BOP's concerns.

All four factors thus point in the same direction: the Transgender Offender Manual is reasonable under *Turner*.

This Court also analyzed whether the BOP's policies and practices regarding strip searches specifically—as described by the Transgender Offender Manual and testimony at trial—are reasonable under *Turner*. After weighing all the factors, this Court concluded that they are.

First, there is a valid, rational connection between the strip searches that Plaintiff described and a legitimate penological interest, and between the strip search policies contained in the Transgender Offender Manual and a legitimate penological interest. The BOP has a legitimate security interest both in conducting strip searches quickly and efficiently in emergency scenarios and in addressing the heightened risk of harassment and violence that it has found transgender inmates are subjected to in its prisons.

Second, although Plaintiff does not have a means available to exercise her privacy right during strip searches, the case law establishes that this factor is not dispositive, particularly in the context of strip searches motivated by a legitimate security need. *See, e.g., Timm v. Gunter*, 917 F.2d 1093, 1100 (8th Cir. 1990); *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992); *Covino v. Patrissi*, 967 F.2d

7

73, 79 (2d Cir. 1992); *see also Harris*, 941 F.2d at 1517 (concluding that lack of alternative means to exercise the right at issue was not dispositive).

Third, the accommodation of Plaintiff's right to bodily privacy in the context of the emergency group strip searches she described would have a significant impact on prison staff, inmates, and the allocation of prison resources because it would either require more staff to conduct the searches as quickly or would compromise safety by resulting in slower, less controlled searches.

Finally, the searches Plaintiff described and the policies governing strip searches in the Transgender Offender Manual do not represent an exaggerated response to prison concerns. There is no "obvious, easy alternative" to the manner in which the searches were conducted or the policies contained in the Manual that would not significantly burden prison resources, staff, and other inmates or impede legitimate safety concerns.

As noted previously, all of Plaintiff's claims, save one, were dismissed at an earlier stage in this case. *See* ECF No. 91 (Order adopting Report & Recommendation). For the reasons stated on the record, incorporated by reference, and summarized herein, this Court finds for Defendant with respect to Plaintiff's sole remaining claim.

Accordingly, the Clerk shall enter judgment stating, "Plaintiff's claims are DISMISSED." The Clerk shall close the file.

**SO ORDERED on January 17, 2025.**

<u>s/Mark E. Walker</u>
**Chief United States District Judge**
